On Application for Rehearing
The opinion of December 15, 2000, is withdrawn, and the following opinion is substituted therefor.
New York Life Insurance Company ("New York Life") is a defendant in an action pending in the Clarke Circuit Court. We granted it permission to appeal from an order denying its motion for a summary judgment. See Rule 5, Ala.R.App.P. New York Life contends that the plaintiff's claims are precluded by the class-action settlement and final judgment entered inHarry W. Willson v. New York Life Insurance Co. (No. 94/127804, February 1, 1996) (Sup.Ct. N.Y. County, N.Y. 1996) (unpublished) and thus that the trial court erred in denying the motion for summary judgment. New York Life argues that the plaintiff had proper notice of the Willson action and failed to opt out of the class by the court-ordered deadline.
The Willson class action consolidated four separate nationwide class actions filed in 1994 and 1995. The consolidated complaint alleged a broad range of improper life-insurance sales practices, including (1) misrepresentations of the future cash value of a policy; (ii) misrepresentations that only one or a limited number of premiums would be required to maintain policies in force; (iii) misrepresentations that the products being offered were retirement, savings, or investment plans, when, in fact, they were life-insurance policies; (iv) improper policy replacements, or "churning," including misrepresentations that some or all of an existing policy's cash values should be used to purchase or maintain additional life insurance or a "replacement" policy; and (v) misrepresentations about the dividend scales, values, and assumptions in policy illustrations. On July 28, 1995, the parties executed a "Settlement Agreement." On July 31, 1995, the New York Supreme Court entered an order by which it certified a nationwide class for settlement purposes, ordered that notice of the proposed settlement be given to the class, directed the forms and methods of that notice, and set out the method by which class members could exclude themselves from the class or object to the terms of the proposed settlement.
Pursuant to the July 31, 1995, order, a court-approved notice went out to all 3 *Page 1074 
million members of the class; it was sent to their last known addresses by first-class mail. Included with the notice were a cover letter from New York Life, a question-and-answer brochure, and an individually customized statement of eligibility. The class notice informed theWillson class members of the terms of the proposed settlement, their right to object to it, their right to exclude themselves from the class, and the deadline for objecting or requesting exclusion. The class notice highlighted the release portion of the settlement. Class members were instructed to "read [the release] very carefully because it will affect your rights if you remain in the class."
It is not disputed that the plaintiff in this case, James O. Griffin, actually received the court-approved Willson class notice. Griffin is the owner and operator of J.O. Griffin Contracting Company. The policy was purchased by J.O. Griffin Contracting Company to insure James O. Griffin. (The parties treat James O. Griffin and J.O. Griffin Contracting Company as the same entity; we will sometimes refer to them collectively in this opinion as "Griffin.") Rita Gladstone, a New York Life employee who sent out the notices, testified by affidavit that the notice packet was sent by Boston Financial Data Services to "J. O. Griffin Contracting Company, Rural Route 3, Box 365, Grove Hill, Alabama 36451," on August 24, 1995.[1] Her affidavit also states that Griffin did not respond to the class notice before the October 31, 1995, deadline. Apparently, attorney Gaines McCorquodale sent a letter, postmarked December 11, 1995, to Boston Financial Data Services, but that letter did not contain the signature, address, and telephone number for Griffin, as was required by the class notice. Thus, the plaintiff did not exclude himself from the class.
On May 29, 1998, James O. Griffin sued New York Life and its agents Don Stephens and Jimmie Stephens in the Clarke Circuit Court. Griffin claimed fraud and a breach of contract relating to the sale and administration of a whole life insurance policy that he had originally purchased in 1990 and an identical replacement policy that was issued on October 10, 1996. Griffin's complaint recites these events which he alleges occurred before the settlement of the Willson class action was entered on February 1, 1996:
 "7. Some time prior to July 2, 1990, defendant DON STEPHENS did contact the plaintiff, JAMES O. GRIFFIN in an effort to sell to the plaintiff a policy of life insurance to be issued through defendant, NEW YORK LIFE INSURANCE CO., INC.
 "8. During the course of these meetings regarding the life insurance policy, the defendant DON STEPHENS represented to the plaintiff that, included in the policy benefits would be a retirement or annuity plan for the plaintiff, so that he would receive life insurance benefits and additional retirement or annuity benefits in taking out the one (1) policy.
 "9. The plaintiff relied on the representations made by the defendant, DON STEPHENS, and the plaintiff purchased *Page 1075 
for good and valuable consideration, a single policy of life insurance with the defendant, NEW YORK LIFE INSURANCE CO., INC., policy number 38163230. In making this purchase of a life insurance policy and additional retirement plan benefits, the plaintiff gave the defendant, DON STEPHENS, the sum of Forty-Two Thousand One Hundred four and 78/100 ($42,104.78) Dollars. The face amount of the above numbered policy was Two Hundred Fifty thousand ($250,000.00) Dollars.
 "10. In 1995, without any prior knowledge on the part of the plaintiff and without any communication from any of the defendants to the plaintiff, the plaintiff learned that he had been rated `Class D' because of his health, and that his premiums were substantially higher than the amount that was agreed upon on the initial purchase of this life insurance policy. During this time in 1995, the plaintiff learned for the first time that the defendants had taken all of his Forty-Two Thousand One Hundred Four and 78/100 ($42,104.78) Dollars, and were now claiming that he owed additional money for insurance premiums on this policy. This was different than the representations made by the defendant, DON STEPHENS, at the time of the sale of the policy wherein defendant DON STEPHENS represented to the plaintiff that the initial sum which was paid would be the only money due and payable on this life insurance policy and that this sum would be adequate to fund the policy for the balance of the plaintiff's life.
 "11. That, after much correspondence and after the plaintiff retained the assistance of an attorney, the defendants admitted that the `Class D' rating was due to be corrected, and the defendants refunded to the plaintiff the sum of Twenty-Seven Thousand Four Hundred Forty-Five and no/100 ($27,445.00) Dollars which was the amount which the plaintiff had been overcharged for premium payments on policy number 38163230."
On October 10, 1996, New York Life issued another policy in place of the policy that Griffin had purchased in 1990. This policy showed a face amount of $250,000 and bore the same number as the previous policy, 38163230. The allegations of the plaintiff's complaint concerning events that occurred after February 1, 1996, and relating to this replacement policy are as follows:
 "12. On July 2, 1996, the plaintiff received written notice from defendant NEW YORK LIFE INSURANCE CO., INC. that his net cash value on policy number 38163230 was Eighty-eight Thousand Three Hundred Eighty-Six and 11/100 ($88,386.11) Dollars. On December 24, 1997, the plaintiff notified NEW YORK LIFE INSURANCE CO., INC. and JIMMIE STEPHENS that he desired to obtain the cash value of the policy 38163230 in order to invest said money in another financial plan.
 "13. In response to this request of the plaintiff, the plaintiff learned through correspondence from defendant, NEW YORK LIFE INSURANCE CO., INC. that his cash value in policy number 38163230 was Forty-One and 25/100 ($41.25) Dollars, not Eighty-Eight Thousand Three Hundred Eighty-Six and 11/100 ($88,386.11) Dollars. The plaintiff also learned through correspondence from defendant, NEW YORK LIFE INSURANCE CO., INC. that the face amount of policy number 3816230 was One Hundred Five and no/100 ($105.00) Dollars, not Two Hundred Fifty Thousand ($250,000.00) Dollars. All of the correspondence referred to in this paragraph was during March and April, 1998." *Page 1076 
On April 21, 1999, the defendants New York Life and Don Stephens jointly moved for a summary judgment on all claims against them, citing the Willson class-action settlement. On June 29, 1999, the trial judge denied New York Life's motion for summary judgment. On July 9, 1999, Griffin moved to dismiss defendants Don Stephens and Jimmie Stephens; the trial judge granted the motion and dismissed Don Stephens and Jimmie Stephens on July 16, 1999. New York Life petitioned this Court for permission to appeal; this Court granted permission on September 24, 1999.
The record reflects that J.O. Griffin Contracting Company purchased, for its owner James O. Griffin, life-insurance policy number 38163230 from Don Stephens, a New York Life agent, with a policy date of July 2, 1990. Griffin paid a one-time premium of $42,104.78 for the policy; the face amount of the policy was $250,000. According to Griffin's complaint, Stephens misrepresented to him that this would be the only money due and payable on the policy and that the sum would be adequate to fund the policy for the balance of the plaintiff's life. In 1995, Griffin learned that he had been improperly rated "Class D" because of his health. Griffin also learned that New York Life was claiming that he owed additional money for premiums on this policy, despite Don Stephens's representations that the initial sum paid would be the only amount due. Griffin did not pay any further premiums, and in a notice dated June 6, 1996, New York Life advised him that the policy had lapsed on January 2, 1996.
Griffin's complaint alleges that after he retained an attorney, New York Life admitted that the "Class D" rating was due to be corrected. Griffin's attorney negotiated with New York Life, and the company issued Griffin a refund in the amount of $27,445. The replacement policy was issued October 10, 1996, showing a face amount of $250,000. This policy bore the same number as the previous policy (38163230). An endorsement read: "This policy is issued in place of a previously issued policy with the same policy number or in place of part of a previously issued policy with the same policy number." (Emphasis added.) Griffin contends that it is the replacement policy upon which he bases his claims.
In an anniversary notice generated by New York Life, dated July 2, 1996, the company informed Griffin that the net cash value of his original policy was $88,386.11. On December 24, 1997, Griffin notified New York Life that he desired to obtain the cash value of the replacement policy. In response to this request, New York Life notified Griffin that the cash value of his policy was $41.25 and that the face amount of the policy was $105.00.
Griffin sued New York Life and two of its agents, alleging fraud and breach of contract. The question before us is whether, as New York Life contends, because Griffin failed to opt out of the Willson class, his claims are barred by the class-action settlement in Willson.
New York Life contends that Griffin's allegations that New York Life sold him a whole-life insurance policy, misrepresented the amount of premiums necessary to keep the policy in force, falsely represented that the policy would include a retirement plan, and failed to administer the policy properly all relate to matters as to which the judgment in theWillson class action is res judicata. Griffin did not exclude himself from the Willson class before the Willson court's opt-out deadline of October 31, 1995. New York Life cites New York Life Insurance Co. v.Robinson, 735 So.2d 463 (Ala. 1999), in which this Court held that claims similar to those made by Griffin *Page 1077 
were barred by the fact that the plaintiffs had failed to opt out of the Willson class. Robinson, 735 So.2d at 466.
Griffin argues that the actions that resulted in this lawsuit arose after the New York Supreme Court had entered its final judgment inWillson on February 1, 1996. Under the Willson class-action settlement, the members of the class are all holders of policies issued by New York Life from January 1, 1982, through December 31, 1994. While Griffin's initial policy was issued within that period, his replacement policy was issued on October 10, 1996.
New York Life argues that this Court addressed the validity of theWillson final order, and its effect upon similarly situated class members, like Griffin, in New York Life Insurance Co. v. Robinson,735 So.2d 463 (Ala. 1999). In Robinson, this Court recognized:
 "[T]he Willson Stipulation of Settlement released New York Life and its agents from liability for claims `connected with, arising out of, or related to, in whole or in part, . . . representations allegedly made . . . relating to: . . . the fact that the Policies were or were not life insurance . . . [or] whether the Policies were, would operate or could function as an Investment Plan.' Willson Stipulation of Settlement at 56-58. Clearly, the plaintiffs' claims with respect to Stephens's misrepresentation of the policies as containing retirement benefits fall within the scope of the broad language of this settlement agreement."
735 So.2d at 467. All of the Robinson plaintiffs were holders of policies issued by New York Life from January 1, 1982, through December 31, 1994, and were thus delineated as members of the class. Griffin is a member of this class as to his original policy, because he did not timely opt out of the class. Thus, he is bound by the terms of the Willson class-action settlement and final judgment, as to his claims based upon paragraphs 7, 8, 9, and 10 of his complaint. The trial court erred in denying New York Life's motion for summary judgment as to those paragraphs. Its order, insofar as it denied a summary judgment on those claims, is reversed. As to those claims, a judgment is rendered in favor of New York Life.
As to the allegations of fraud concerning the replacement policy issued October 10, 1996, that are the subject of paragraphs 12 and 13 of the plaintiff's complaint, the order denying the summary judgment is affirmed. The claims arising out of the issuance of the second policy require a resolution of genuine issues of material fact; thus, a summary judgment for either side would be inappropriate at this time. The order of the trial court is affirmed insofar as it relates to paragraphs 12 and 13.
The order denying the motion for summary judgment is therefore affirmed in part, as to paragraphs 12 and 13 of the complaint; it is reversed in part, as to paragraphs 7, 8, 9, and 10; as to paragraphs 7, 8, 9, and 10, a judgment is rendered for New York Life; and the case is remanded.
APPLICATION FOR REHEARING OVERRULED; OPINION OF DECEMBER 15, 2000, WITHDRAWN; OPINION SUBSTITUTED WITH CORRECTED FACTS; AFFIRMED IN PART; REVERSED IN PART; JUDGMENT RENDERED IN PART; AND CASE REMANDED.
Moore, C.J., and Houston, Lyons, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
See, J., recuses himself.
[1] New York Life stipulated in its motion for a summary judgment that J.O. Griffin Contracting Company was the owner of the policy and that James O. Griffin, the individual, brought this action, although J.O. Griffin Contracting Company, as the policy owner, is the holder of rights in the policy and thus received any communication from New York Life concerning the policy. New York Life agreed, for purposes of the summary-judgment motion, to treat James O. Griffin and J.O. Griffin Contracting Company interchangeably as policy owner and plaintiff. *Page 1078