ACCEPTED
06-15-00037-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/9/2015 1:03:17 PM
DEBBIE AUTREY
CLERK

# No. 06-15-00037-CV

_____

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/9/2015 1:03:17 PM
DEBBIE AUTREY
Clerk

_____

MICHAEL D. LEE

PLAINTIFF/APPELLANT

VS.

THE ROGERS AGENCY, C. MICHAEL ROGERS,
AND NEW YORK LIFE INSURANCE COMPANY

DEFENDANTS/APPELLEES

_____

ON APPEAL FROM CAUSE NO. 2014-0615-B
124TH JUDICIAL DISTRICT COURT, GREGG COUNTY, TEXAS

_____

BRIEF OF APPELLEE NEW YORK LIFE INSURANCE COMPANY

_____

Andrew G. Jubinsky
State Bar No. 11043000
Andrew C. Whitaker
State Bar No. 21273600
Ryan K. McComber
State Bar No. 24041428

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

COUNSEL FOR APPELLEE
NEW YORK LIFE INSURANCE
COMPANY

## IDENTITY OF PARTIES AND COUNSEL

Michael D. Lee

**APPELLANT**

James A. Holmes (trial counsel)
State Bar No. 00784290
**THE LAW OFFICE OF JAMES HOLMES, P.C.**
212 South Marshall
Henderson, Texas 75654
Telephone: (903) 657-2800
Facsimile: (903) 657-2855
jh@jamesholmeslaw.com

John R. Mercy (appellate counsel)
State Bar No. 13947200
**MERCY CARTER TIDWELL, L.L.P.**
1724 Galleria Oaks Drive
Texarkana, Texas 75503
Telephone:  (903) 794-9419
Facsimile:  (903) 794-1268
jmercy@texarkanalawyers.com

**COUNSEL FOR APPELLANT
MICHAEL D. LEE**

The Rogers Agency and
C. Michael Rogers

**APPELLEES**

Craig Brinker
State Bar No. 03033200
LaToyia Pierce
State Bar No. 24049109
**WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER, LLP**
901 Main Street, Suite 4800
Dallas, Texas 75202
Telephone: (214) 698-8000
Facsimile: (214) 698-1101
craig.brinker@wilsonelser.com
latoyia.pierce@wilsonelser.com

**COUNSEL FOR APPELLEES
THE ROGERS AGENCY AND
C. MICHAEL ROGERS**

New York Life Insurance
Company

**APPELLEE**

Andrew G. Jubinsky
State Bar No. 11043000
Andrew C. Whitaker
State Bar No. 21273600
Ryan K. McComber
State Bar No. 24041428

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202-3796
Telephone: (214) 939-2000
Facsimile: (214) 939-2090
andy.jubinsky@figdav.com
andrew.whitaker@figdav.com
ryan.mccomber@figdav.com

**COUNSEL FOR APPELLEE
NEW YORK LIFE INSURANCE
COMPANY**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................v

RECORD REFERENCES ...............................................................................ix

STATEMENT OF THE CASE.........................................................................ix

STATEMENT REGARDING ORAL ARGUMENT ..............................................xi

ISSUE PRESENTED........................................................................................xi

STATEMENT OF FACTS ...............................................................................1

    A.    Lee Applies for, and NYL Issues, the Policies ....................................1

    B.    Lee Pays Additional Lump Sums Towards
        the Premiums for the Policies..............................................................1

    C.    Lee Creates and Assigns to the Trust
        All of His Interests in the Policies.......................................................1

    D.    The Class Plaintiffs File the Willson Action......................................3

    E.    The Parties Settle the Willson Action .................................................5

    F.    The Parties Send Notice to the Trustee
        of the Settlement of the Willson Action...............................................6

    G.    The Court Enters the Willson Final Judgment....................................6

    H.    Lee Files This Action ..........................................................................8

    I.    The Federal Court Remands This Action to State Court .....................9

    J.    NYL Seeks Summary Judgment Based on the
        Res Judicata Effect of the Willson Final Judgment ..........................10

    K.    The District Court Enters Summary
        Judgment in Defendants' Favor .........................................................10

SUMMARY OF THE ARGUMENT ..................................................................11

ARGUMENT ..................................................................................................12

    A.    Standard of Review ...........................................................................12

    B.    The Elements of Res Judicata ...........................................................12

    C.    The Willson Final Judgment Is a Final Judgment
        on the Merits from a Court of Competent Jurisdiction ......................13

    D.    Lee Is in Privity with the Trustee, Who
        Was a Party to the Willson Final Judgment.......................................14

E.     Lee Relinquished All of His Rights with
Respect to the Policies.............................................................18

F.     Lee's Claims Were Raised, and Disposed
of, in the Willson Action...................................................20

G.     Lee's Complaints Regarding Notice Are Without Merit.....................23

CONCLUSION............................................................................29

# INDEX OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Amstadt v. U.S. Brass Corp.*,
 919 S.W.2d 644 (Tex. 1996) ........................................................13, 14, 15, 16

*Appleby v. Andreasen,*
 758 N.W.2d 615 (Neb. 2008) ...........................................................................22

*Barr v. Resolution Trust Corp.*,
 837 S.W.2d 627 (Tex. 1992) .......................................................................12, 13

*Browning v. Placke*,
 698 S.W.2d 362 (Tex. 1985) (per curiam) ........................................................28

*Canton-Carter v. Baylor Coll. of Med.*,
 271 S.W.3d 928 (Tex. App.--Houston [14th Dist.] 2008, no pet.)....................11

*Citizens Ins. Co. of America v. Daccach*,
 217 S.W.3d 430 (Tex. 2007) ...........................................................................14

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974)........................................................................................26

*Elite Sportswear Products, Inc. v. New York Life Ins. Co.*,
 C.A. No. 05-CV-5181, 2006 WL 3052703 (E.D. Pa. Oct. 24, 2006),
 *aff'd*, 270 F. App'x 153 (3d Cir. 2008)...........................................................27

*Fluid Disposal Specialties, Inc. v. New York Life Ins. Co.*,
 C.A. No. 02-1145, 2003 WL 25909423 (W.D. La. Mar. 28, 2003)...................23

*Getty Oil Co. v. Insurance Co. of North America*,
 845 S.W.2d 794 (Tex. 1992) ................................................................... 13, 15

*Gramatan Home Investors Corp. v. Lopez*,
 386 N.E.2d 1328 (N.Y. 1979).........................................................................13

*Grimm v. Rizk*,
 640 S.W.2d 711(Tex. App.--Houston [14th Dist.] 1982,
 writ ref'd n.r.e.).......................................................................................15, 16

*Hallco Texas, Inc. v. McMullen County*,
 221 S.W.3d 50 (Tex. 2006)..........................................................................12

*Hill Country Spring Water v. Krug*,
 773 S.W.2d 637 (Tex. App.--San Antonio 1989, writ denied) ........................25

*James Mills Orchards Corp. v. Frank*,
 244 N.Y.S. 473 (N.Y. Sup. Ct. 1930)..............................................................28

*John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n*,
 354 S.W.3d 843 (Tex. App.--Austin 2011, pet. denied) ..................................16

*Johnson v. General Motors Corp.*,
 598 F.2d 432 (5th Cir. 1979) ..........................................................................27

*New Mexico ex rel. King v. Capital One Bank (USA) N.A.*,
 980 F. Supp. 2d 1346 (D.N.M. 2013)..............................................................24

*Estate of Leder v. C.I.R.,*
 893 F.2d 237 (10th Cir. 1989) ........................................................................19

*Lesikar v. Moon*,
 No. 01-12-00406-CV, 2014 WL 4374117
 (Tex. App.--Houston [1st Dist.] Sept. 4, 2014, pet. denied) ...........................16

*Manji v. New York Life Ins. Co.*,
 945 F. Supp. 919 (D.S.C. 1996) ......................................................................23

*Michels v. Phoenix Home Life Mut. Ins. Co.,*
 No. 95/5318, 1997 WL 1161145 (N.Y. Sup. Ct. Jan. 7, 1997) ........................25

*Monahan v. New York City Dep't of Corrections*,
 214 F.3d 275 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000) ...........................14

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950)........................................................................................25

*New York Life Ins. Co. v. Griffin,*
 794 So. 2d 1072 (Ala. 2001)............................................................................23

*New York Life Ins. Co. v. Robinson*,
 735 So. 2d 463 (Ala. 1999)..............................................................................23

*O'Brien v. City of Syracuse*,
    429 N.E.2d 1158 (N.Y. 1981)....................................................................13

*PNS Stores, Inc. v. Rivera*,
    379 S.W.3d 267 (Tex. 2012) ................................................................27

*Provident Life & Acc. Ins. Co. v. Knott*,
    128 S.W.3d 211 (Tex. 2003) ................................................................12

*In re Prudential Securities, Inc. Ltd. Partnerships Litigation,*
    164 F.R.D. 362 (S.D.N.Y.), *aff'd*, 107 F.3d 3 (2d Cir. 1996),
    *cert. denied*, 521 U.S. 1119 (1997)................................................25, 26

*Randall v. Goodall & Davison, P.C.*,
    No. 03-12-00005-CV, 2013 WL 3481518
    (Tex. App.--Austin July 2, 2013, pet. denied)....................................18

*Rife v. Payton*,
    No. 09-12-00515-CV, 2013 WL 6145774
    (Tex. App.--Beaumont 2013, no pet.)................................................ 11

*Smallwood v. Illinois Cent. R.R. Co.*,
    385 F.3d 568 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005) ........9

*Smith v. Huston*,
    251 S.W.3d 808 (Tex. App.--Fort Worth 2008, pet. denied) ............14

*Star-Telegram, Inc. v. Doe*,
    915 S.W.2d 471 (Tex. 1995) ................................................................12

*State Farm Fire & Cas. Co. v. Gandy*,
    925 S.W.2d 696 (Tex. 1996) ................................................................16

*Strather v. Dolgencorp of Texas, Inc.*,
    96 S.W.3d 420 (Tex. App.--Texarkana 2002, no pet.)......................12

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..............................................................................15

*Texas Water Rights Comm'n v. Crow Iron Works*,
    582 S.W.2d 768 (Tex. 1979) ................................................................13

*Weigner v. City of New York*,
    852 F.2d 646 (2d Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989) ......................25

*Williams v. Marvin Windows and Doors*,
    790 N.Y.S.2d 66 (N.Y. App. Div. 2005) ..........................................................27

## Other Authorities

26 C.F.R. § 20.2042-1(c)(2) ...................................................................................19

26 U.S.C. § 2042 ....................................................................................................19

N.Y. C.P.L.R. 901(a)(4) .........................................................................................17

N.Y. General Business Law § 349 .....................................................................5, 21

U.S. Const. art. IV, § 1 ...........................................................................................28

## RECORD REFERENCES

The Clerk's Record, which was filed on August 12, 2015, will be cited as "CR." The Reporter's Record, which is from the summary judgment hearing held on February 4, 2015 and was filed on August 25, 2015, will be cited as "RR." The Supplemental Clerk's Record, which was filed on September 2, 2015, will be cited as "SCR."

The "District Court" refers to the 124th Judicial District Court of Gregg County, Texas, the Honorable Alfonso Charles presiding.

The "Federal Court" refers to the United States District Court for the Eastern District of Texas, Tyler Division, Honorable Michael Schneider presiding, which issued the Order Granting Motion to Remand [CR 36-45] on October 14, 2014.

"Appellant's Brief" refers to the Brief of Appellant, which was filed herein on November 9, 2015.

Unless otherwise indicated, all emphases are supplied by counsel.

## STATEMENT OF THE CASE

This is a suit arising out of alleged misrepresentations that Defendants The Rogers Agency and C. Michael Rogers (collectively, "Rogers"), an agent of Defendant New York Life Insurance Company ("NYL"), purportedly made to Plaintiff Michael D. Lee ("Lee") following his purchase between 1985 and 1987 of three whole life insurance policies (collectively, the "Policies") from NYL. [CR 5-

10, 717-24.]   According to Lee, who is a certified public accountant, Rogers promised that, if Lee paid $238,188.15 in premiums on the Policies in 1989, he "would not owe any additional premiums for the Policies and they would remain in effect for his lifetime."  [CR 719.]  In June 1991, Lee transferred all of his "right, title, and interest" in the Policies to the Michael Dee Lee Irrevocable Insurance Trust (the "Trust") [CR 778], and in 2012-13, the Policies lapsed for non-payment of premium or were surrendered.  [CR 761, 771.]

In March 2014, Lee filed this action against Rogers and NYL (collectively, "Defendants").  [CR 5-10, 761, 771.]  In Plaintiff's Second Amended Original Petition (the "Amended Petition"), Lee asserts claims against Defendants for negligence, violations of the Texas Deceptive Trade Practices Act ("DTPA"), violations of the Texas Insurance Code, breach of contract, and declaratory judgment.  [CR 717-24.]  In November 2014, NYL sought summary judgment on the ground that all of Lee's claims were barred by the final judgment entered in 1996 in a class-action lawsuit in New York, which adjudicated all claims against Defendants relating to the sale, servicing, administration, and performance of the Policies, including any and all claims based on alleged misrepresentations or guarantees regarding when and if the Policies would be self-sustaining in the future.  [CR 50-700.]  On June 26, 2015, the District Court entered summary judgment in Defendants' favor [CR 1074], and the following month, Lee filed the

Notice of Appeal [CR 1075-76].

## STATEMENT REGARDING ORAL ARGUMENT

NYL does not consider oral argument necessary in this case. The parties have fully briefed the issues, before both the District Court and the Court, and oral argument will likely add very little to the decisional process. Accordingly, this appeal should be submitted on the parties' briefs, and the District Court's entry of judgment in Defendants' favor should be summarily affirmed. In the event, however, the Court allows oral argument, NYL requests to participate.

## ISSUE PRESENTED

Whether the District Court correctly entered summary judgment in Defendants' favor on the ground that all of Lee's claims are barred as a matter of law by the preclusive effect of the final judgment in a prior class-action lawsuit.

A.   **Lee Applies for, and NYL Issues, the Policies.**

With the assistance of Rogers, his soliciting agent, Lee applied to NYL for three whole life insurance policies, which NYL issued as follows:

| Effective Date | Policy No. | Original Face Amount |
|---|---|---|
| March 12, 1985 | 37 958 331 | $1,000,000.00 |
| April 12, 1986 | 42 161 943 | $1,000,000.00 |
| April 24, 1987 | 38 981 496 | $1,000,000.00 |

[CR 458-525, 749.]  Lee elected to apply the dividends generated by the Policies to the purchase of paid up additional insurance, which was itself eligible for dividends.  [CR 762.]

B.   **Lee Pays Additional Lump Sums
Towards the Premiums for the Policies.**

According to Lee, he met with Rogers in 1989 and inquired as to the amount of money necessary to make the Policies "'fully paid up' with no more premiums due."  [CR 719, 750.]  Lee subsequently provided Rogers with two checks, totaling $238,188.15, for delivery to NYL.  [CR 719, 750, 757-58.]

C.   **Lee Creates and Assigns to the Trust
All of His Interests in the Policies.**

In June 1991, Lee, as the Settlor, and Richard A. Dial (the "Trustee"), as the Trustee, entered into the Trust Agreement for the Trust [CR 778-790], in which

1

Lee assigned to the Trustee "all his right, title, and interest in" the Policies and relinquished any rights related to the Policies that he could not convey to the Trustee:

> 3.    Rights in Policy of Insurance.  *The Trustee is hereby vested with all right, title, and interest in and to such policies of insurance*, and the Trustee is authorized and empowered to exercise and enjoy, for the purposes of the Trust herein created, and as absolute owner of such policies of insurance, all the options, benefits, rights, and privileges under such policies, including the right to borrow upon such policies, and to pledge them for a loan or loans or to cancel them. *The insurance companies which have issued such policies are hereby authorized and directed to recognize the Trustee as absolute owners of such policies of insurance, and as fully entitled to all options, rights, privileges, and interests under such policies*; and any receipts, releases, and other instruments executed by the Trustee in connection with such policies shall be binding and conclusive upon the insurance companies and upon all persons interested in this Trust. *The Settlor hereby relinquishes all rights and powers in such policies of insurance which are not assignable, and will, at the request of the Trustee, execute all other instruments reasonably required to effectuate this relinquishment.*[1]

[CR 750, 778.]   In addition, the Trust Agreement expressly divested Lee of whatever rights he would otherwise have had in the Policies:

> Notwithstanding the above, *Settlor shall have no powers exercisable over any insurance policies which become owned by this Trust*, including but not limited to the power to change beneficiaries, the power to cancel policies, or the power to utilize the polices as collateral, so that *he cannot do any act which may be deemed an incident of ownership of the policies*.

[CR 787.]   Finally, the Trust Agreement provided that the Trust was irrevocable

---

[1] The Trust Agreement also authorized the Trustee (among other powers) "to do all such acts, take all such proceedings, and to exercise all rights and privileges, although not hereinbefore specifically mentioned, with relation to any such property." [CR 786.]

and that Lee was irrevocably waiving various rights he otherwise would have had:

> 17.  Irrevocability.  This Trust shall be irrevocable, and the Settlor hereby expressly waives all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source the Settlor may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke, or terminate the Trust, or any of the terms of this agreement, in whole or in part.  To more fully express his intention, the Settlor hereby declares that, by this instrument, the Settlor relinquishes absolutely and forever all his possession or enjoyment of, or right to, the income from the Trust property, and all his rights and powers, whether alone or in conjunction with others, to designate the persons who shall possess or enjoy the Trust property, or the income therefrom.

[CR 788-89.]

Over the ensuing years, some of the required premiums for the Policies were paid through their Automatic Premium Loan provisions, which resulted in the establishment of loans against the Policies' cash values to pay the premiums due and any interest that had accrued on those loans. [CR 763.]  In 2000-01, the Trustee signed forms instructing NYL to apply the dividends and paid-up additions to pay the annual premiums, which served to reduce the cash value and death benefit of the Policies and raised the possibility that, in the event those values ran out, additional out-of-pocket premium payments would be required to keep the Policies in force.  [CR 762.]

D.  **The Class Plaintiffs File the Willson Action.**

In September 1994, Irene and Robert Gillette filed a complaint against NYL on behalf of a putative nationwide class of NYL policyowners, which action was

3

captioned *Gillette v. New York Life Ins. Co.*, Index No. 94/1259031 (Sup. Ct. N.Y. County). [CR 79.] In subsequent months, additional plaintiffs seeking to represent nationwide classes of policyowners filed three more lawsuits against NYL: *Willson v. New York Life Ins. Co.*, Index No. 94/127804 (Sup. Ct. N.Y. County) (filed September 28, 1994), *Villami v. New York Life Ins. Co.*, Index No. 95/112433 (Sup. Ct. N.Y. County) (filed May 16, 1995), and *Silva v. New York Life Ins. Co.*, Index No. 95/114850 (Sup. Ct. N.Y. County) (filed June 13, 1995). [CR 79.] In June 1995, all four of these actions were consolidated under the caption *Willson v. New York Life Ins. Co.*, Index No. 94/127804 (Sup. Ct. N.Y. County) (as consolidated, the "Willson Action"). [CR 79.] NYL categorically denied the allegations against it in the Willson Action and moved to dismiss the plaintiffs' claims, and while those efforts were pending, the parties began discussing settlement. [CR 80.]

On July 28, 1995, the plaintiffs in the Willson Action served the Class Action Consolidated Amended Complaint (the "Willson Complaint"). [CR 79, 86-136.] Although the Willson Complaint contained numerous allegations, one of the central allegations arose out of the premium offset arrangement, which allowed policyowners to use accumulated dividend values from a whole life policy to pay all or part of the required premiums. [CR 93-113.] More specifically, the class plaintiffs alleged that NYL had fraudulently induced and deceived the class

**4**

members into purchasing and maintaining life insurance policies based on false and misleading sales presentations, including alleged misrepresentations regarding the premium offset arrangement, and they asserted causes of action for breach of contract, fraud, negligent misrepresentation, violations of the New York deceptive trade practices law (General Business Law § 349), and unjust enrichment.[2]  [CR 124-34.]

E.      **The Parties Settle the Willson Action.**

On July 28, 1995, after months of negotiation and discovery, the parties to the Willson Action executed a Stipulation of Settlement (the "Settlement Agreement").  [CR 80, 137-217.]  On July 31, 1995, the court in the Willson Action signed the Findings and Order Confirming Certification of the Class for Settlement Purposes, Directing Issuance of Class Notice and Scheduling a Settlement Hearing (the "July 1995 Order"), which (among other provisions) certified a nationwide class for settlement purposes only, found that the Settlement Agreement was sufficient to warrant notice to members of the class and directed the forms and methods of such notice, and set forth procedures for the class members to use in excluding themselves from the class or objecting to the terms of the proposed settlement.  [CR 80, 218-33.]

---

[2] As the court in the Willson Action subsequently observed:  "The [Willson] Complaint includes allegations relating to all aspects of New York Life's sale and subsequent treatment of the policies and policyowners encompassed by the Class definition."  [CR 286.]

**F. The Parties Send Notice to the Trustee of the Settlement of the Willson Action.**

Pursuant to the July 1995 Order, the parties mailed the court-approved notice of the class action, a cover letter from NYL, a question-and-answer brochure, and an individually customized statement of eligibility (collectively, the "Class Notice") to three million class members at their last known addresses (according to NYL's records) by first-class mail. [CR 80-81, 405-26.] The Class Notice regarding the Policies was mailed to the Trustee, as the owner of record of the Policies, at his last known address and was not returned as undelivered or undeliverable. [CR 827.] Pursuant to the July 1995 Order, the parties also caused to be published, in newspapers across the country, notice of the settlement of the Willson Action. [CR 81, 427.] The Trustee did not request exclusion from the class before the October 31, 1995 deadline, and he was not included on the court-approved list of individuals who properly asked to be excluded from the class. [CR 529-30, 546-700.]

**G. The Court Enters the Willson Final Judgment.**

On February 1, 1996, the court in the Willson Action entered its Findings of Fact, Conclusions of Law, and Final Order and Judgment (the "Willson Final Judgment"). [CR 235-310.] In the Willson Final Judgment, which was 75 pages long, the court (1) held that it had subject-matter jurisdiction and personal jurisdiction over all class members, (2) found that the class representatives

6

adequately represented the class, (3) certified a settlement class, (4) held that the Class Notice "constituted due, adequate and reasonable notice to all Class Members" and "satisfied the requirements of due process," (5) approved the settlement as "fair, reasonable and adequate and in the best interests of the Class," and (6) dismissed the Willson Action on the merits and with prejudice. [CR 256-67, 299, 306-07, 310.] The Willson Final Judgment further provided that the terms of the Settlement Agreement and the Willson Final Judgment "shall forever be binding on, and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by, the plaintiffs and all other settlement Class Members, as well as their heirs, executors and administrators, successors and assigns."[3] [CR 307-08.]

In the Willson Final Judgment, the court also approved the as-amended Settlement Agreement [CR 305, 307], which (1) defined the "Class Members" as "all persons or entities who have, or had at the time of the Policy's termination, an ownership interest in one or more Policies issued by New York Life at any time during the Class Period," the "Class Period" as "the period from January 1, 1982 through December 31, 1994, inclusive," and the "Released Transactions" as "the marketing, solicitation, … purchase, operation, retention, administration, or

---

[3] The Willson Final Judgment also provided that Class Members were enjoined from "filing, commencing or prosecuting any lawsuit" or participating in any class action against NYL "based on or relating to the facts and circumstances underlying the claims and causes of action in this action, or to the Released Transactions (as that term is defined in the Settlement Agreement)." [CR 308.]

replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies"; (2) provided that the Class Members were releasing NYL and the other released parties (including agents such as Rogers) from all claims stemming in any way from the Released Transactions; and (3) enjoined the Class Members from prosecuting claims in any forum against NYL and the other released parties based on the Released Transactions.  [CR 319-20, 328, 366-70.]  In accordance with the terms of the Settlement Agreement, a post-settlement notice setting forth the Class Members' rights was mailed to the Trustee, as the owner of record of the Policies, at his last known address and was not returned as undelivered or undeliverable.  [CR 356-59, 857.]

## H.    Lee Files This Action.

Two of the Policies lapsed for non-payment of premium in April 2012, with the remaining cash value used to purchase extended term insurance that subsequently expired, and the other Policy was surrendered in 2013.  [CR 761, 771.]  In March 2014, Lee filed this action, and in Plaintiff's Original Petition (the "Original Petition"), he alleged claims against Defendants for negligence and alleged violations of the DTPA and the Texas Insurance Code.  [CR 5-10.]  According to Lee, Rogers had falsely represented that, in the event Lee paid an

8

additional $238,188.15 in premiums, he would not owe any additional premiums for the Policies, which would remain in effect for his lifetime. [CR 7.] NYL timely removed the action to the Federal Court, and in its notice of removal, NYL contended that Rogers had been improperly joined, as all of Lee's claims against him were barred by the Willson Final Judgment. [CR 26-34.]

## I.    The Federal Court Remands This Action to State Court.

Lee then filed a motion to remand, in which he asserted that his claims, which were purportedly based on the amount of the premiums needed to keep the Policies in force for the rest of his life, did not fit within the claims that were released in the Willson Final Judgment. [CR 42.] In its order dated October 14, 2014 [CR 36-45], the Federal Court rejected Lee's argument as follows:

> Rogers' alleged misrepresentations of which Lee complains falls squarely within the type of misrepresentations listed in the *Willson* release. Any claims arising from such misrepresentation against Rogers Defendants--as the agents of NYL--were released in the *Willson* settlement. Thus, NYL has met its heavy burden to show that "there is no reasonable basis for the district court to predict that the Lee might be able to recover against an in-state defendant."

[CR 42 (internal citations omitted).] The Federal Court nevertheless remanded the case under the Common Defense Rule,[4] inasmuch as the preclusive effect of the

---

[4] *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (holding that, "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant"; instead, "the entire suit must be remanded to state court"), *cert. denied*, 544 U.S. 992 (2005).

Willson Final Judgment also applied to Lee's claims against NYL, meaning that "there is no improper joinder but only an ill-founded case as to all the defendants." [CR 43-45.]

**J.    NYL Seeks Summary Judgment Based on the Res Judicata Effect of the Willson Final Judgment.**

In November 2014, NYL sought summary judgment on the ground that all of Lee's claims in this action are barred by the preclusive effect of the Willson Final Judgment.  [CR 50-700.]  On December 23, 2014, Lee filed the Amended Petition, which included, in addition to the claims for negligence and alleged violations of the DTPA and the Texas Insurance Code in the Original Petition, claims for breach of contract and declaratory judgment.  [CR 717-24.]  NYL thus supplemented its summary judgment motion to address these new claims.  [CR 706-13, 726-32.]

**K.    The District Court Enters Summary Judgment in Defendants' Favor.**

On January 12, 2015, Lee filed his response to NYL's motion for summary judgment.  [CR 737-95.]  Even though he had recently asserted a breach of contract claim in the Amended Petition, Lee alleged in the response, for the first time, that he was not bound by the Willson Final Judgment because he had transferred ownership of the Policies to the Trustee in 1991.  [CR 738-41.]  The District Court heard NYL's summary judgment motion on February 4, 2015 [RR 1-37], and on June 26, 2015, the District Court signed the Order Granting

Defendants' Motion for Summary Judgment, which dismissed all of Lee's claims with prejudice.  [CR 1074.]  On July 20, 2015, Lee filed the Notice of Appeal, in which he challenged the District Court's entry of summary judgment in Defendants' favor.[5]  [CR 1075-76.]

## SUMMARY OF THE ARGUMENT

The District Court correctly found that the Willson Final Judgment bars, as a matter of law, all of Lee's claims in this action.  All of the elements of res judicata are satisfied here, as (1) the Willson Final Judgment is a final judgment on the merits from a court of competent jurisdiction, (2) Lee was in privity with the Trustee, who was a Class Member in the Willson Action, and (3) Lee's claims were raised, and disposed of, in the Willson Action.  Moreover, the parties to the Willson Action provided sufficient notice to the Class Members (such as the Trustee) of their rights.  As the District Court correctly found, none of Lee's arguments to the contrary have any merit, and the Court should affirm the District Court's summary judgment in NYL's favor.

---

[5] Lee filed objections to some of the summary judgment evidence submitted by NYL. [CR 733-36, 839-49.]  The District Court entered an order denying those objections [CR 854], and Lee did not challenge that ruling in his Notice of Appeal [CR 1075-76] or mention that ruling in Appellant's Brief, thereby waiving any complaint he might have had about it.  *See Rife v. Payton*, No. 09-12-00515-CV, 2013 WL 6145774, at *1 (Tex. App.--Beaumont 2013, no pet.) ("In reviewing a civil case, an appellate court has no discretion to consider an issue not presented in an appellant's brief."); *see also Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.--Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

## ARGUMENT

### A.    Standard of Review.

The Court reviews the District Court's entry of summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is appropriate if the movant demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Since the District Court's order does not specify the grounds relied upon, Lee must argue that every ground in NYL's motion is erroneous, and the Court must affirm if any of the grounds offered by NYL are meritorious. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Strather v. Dolgencorp of Texas, Inc.*, 96 S.W.3d 420, 422 (Tex. App.--Texarkana 2002, no pet.).

### B.    The Elements of Res Judicata.

The District Court correctly found that all of Lee's claims are barred by res judicata. Res judicata, or claim preclusion, prevents re-litigation of a claim or cause of action that arises out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in the prior suit. *See, e.g., Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). In determining whether a claim "could have been litigated," Texas courts follow a transactional approach, in which determining whether the facts constitute a single transaction entails consideration of "their relatedness in time, space, origin, or motivation, and

whether, taken together, they form a convenient unit for trial purposes." [6] *Getty Oil Co. v. Insurance Co. of North America*, 845 S.W.2d 794, 798-99 (Tex. 1992) (internal quotations omitted). Res judicata is thus a broad affirmative defense, as its scope is not limited to matters actually litigated. *Barr*, 837 S.W.2d at 630 (citing *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979)).

Res judicata requires proof of the following: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action on the same claims that were or could have been raised in the first action.[7] *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

**C.     The Willson Final Judgment Is a Final Judgment on the Merits from a Court of Competent Jurisdiction.**

Here, each of the elements of res judicata is met. First, the Willson Final Judgment is a final judgment on the merits from a court of competent jurisdiction. The court in the Willson Action expressly found that it possessed subject-matter

---

[6] The same analysis applies under New York law. *See O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981) (observing that, under the "transactional analysis approach" used in New York, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy").

[7] New York law is to the same effect. *See Gramatan Home Investors Corp. v. Lopez*, 386 N.E.2d 1328, 1331 (N.Y. 1979) (noting that res judicata "holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action").

jurisdiction and personal jurisdiction over all of the Class Members [CR 265-67], and it entered the Willson Final Judgment [CR 235-310], which disposed of all of their claims. Moreover, a class action that proceeds to an agreed final judgment--like the Willson Final Judgment--is final for res judicata purposes. *See Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430, 450 (Tex. 2007) ("Basic principles of res judicata apply to class actions just as they do to any other form of litigation."); *Smith v. Huston*, 251 S.W.3d 808, 825 (Tex. App.--Fort Worth 2008, pet. denied) ("Res judicata applies to an agreed judgment."). The Willson Final Judgment thus meets the first element for res judicata, and Lee does not contend to the contrary in Appellant's Brief.

**D.      Lee Is in Privity with the Trustee, Who Was a Party to the Willson Final Judgment.**

Moreover, Lee is indisputably in privity with the Trustee, who was a party to the Willson Final Judgment. Although the general rule is that a person is not bound by a judgment in a lawsuit to which he was not a party, the doctrine of res judicata creates an exception to this rule by forbidding a subsequent suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit.[8] *Amstadt*, 919 S.W.2d at 652-53. This exception ensures that a

---

[8] The same result is true under New York law. *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir.) (observing that "literal privity is not a requirement for *res judicata* to apply" and that a party is bound by a prior judgment "if his interests were adequately represented by another vested with the authority of representation" (internal quotations omitted)), *cert. denied*, 531 U.S. 1035 (2000).

defendant is not twice vexed for the same acts and achieves judicial economy by precluding those who have had a fair trial from relitigating claims. *Id.* at 653.

Privity connotes those who are so connected with a party to a prior judgment "as to have such an identity of interest that the party to the judgment represented the same legal right." *Grimm v. Rizk*, 640 S.W.2d 711, 715 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.). The Supreme Court of Texas has thus recognized at least three ways in which a person is in privity: (1) he can control an action even if he is not a party to it; (2) his interests can be represented by a party to the action; or (3) he is a successor in interest, deriving his claims through a party to the prior action.[9] *Amstadt*, 919 S.W.2d at 653 (citing *Getty Oil Co.*, 845 S.W.2d at 800). In turn, the U.S. Supreme Court has found privity (1) based on "substantive legal relationships," such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor," and (2) where the non-party was "adequately represented by someone with the same interests who [wa]s a party" to the suit, such as in "properly conducted class actions" and "suits brought by trustees, guardians, and other fiduciaries." *Taylor v. Sturgell*, 553 U.S. 880, 894-95 (2008).

Here, privity exists between Lee and the Trust for a variety of reasons. First,

---

[9] The *Amstadt* court's observation that parties can be in privity "in *at least* three ways" rebuts Lee's claim that "[a] person can *only* be in privity in three ways." *Compare* 919 S.W.2d at 653 *with* Appellant's Brief at 14.

Lee and the Trustee have several substantive legal relationships, as they are the Settlor and Trustee under the Trust, the assignor and assignee of the rights set forth in the Trust Agreement,[10] and the preceding and succeeding owners of the Policies. *See Amstadt*, 919 S.W.2d at 653 ("Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation."). In the Trust Agreement, Lee (as the Settlor) assigned to the Trustee (as the Trustee) "all [of Lee's] right, title, and interest" in the Policies,[11] vested the Trustee with "all right, title, and interest in" the Policies, and authorized and directed NYL to "recognize the Trustee as absolute owners of such policies of insurance, and as fully entitled to all options, rights, privileges, and interests under such policies." [CR 778.] These legal relationships establish privity as a matter of law. *See Grimm*, 640 S.W.2d at 715 (holding that the plaintiffs' claims were barred by res judicata by reason of the final judgment in a prior action brought by the plaintiffs' trustee); *see also Lesikar v. Moon*, No. 01-12-00406-CV, 2014 WL 4374117, at *6-8 (Tex. App.--Houston [1st Dist.] Sept. 4, 2014, pet. denied) (holding that an individual's claims were

---

[10] In fact, the application of res judicata to the assignor/assignee relationship is fatal to Lee's claim [Appellant's Brief at 14] that his transfer of the ownership of the Policies to the Trustee is mutually exclusive with his being in privity with the Trustee.

[11] As a general rule, causes of action are freely assignable. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 707 (Tex. 1996). Lee has not proffered (and, in all probability, cannot proffer) any reason why his claims were not assigned and could not have been assigned in connection the transfer of all of his rights, title, and interest in the Policies to the Trustee. *See John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 354 S.W.3d 843, 849-50 (Tex. App.--Austin 2011, pet. denied) (noting the general rule that property rights may be assigned unless assignment is prohibited by statute or is contrary to public policy).

barred in a subsequent action by his involvement as a trustee in a prior action).

Second, the named plaintiffs and the Trustee represented Lee's interests in the Willson Action. By definition, the named plaintiffs in the Willson Action represented the interests of the Class Members (such as the Trustee) and those in privity with them (such as Lee). *See* N.Y. C.P.L.R. 901(a)(4) (noting that the prerequisites to a class action include that "the representative parties will fairly and adequately protect the interests of the class"). In the Willson Final Judgment, the court found that the named plaintiffs had a sufficient stake in the outcome of the Willson Action and did not have interests antagonistic to those of the class. [CR 256-57.] Moreover, the Trustee had succeeded to Lee's interests in the Policies and was, through his status as a Class Member, representing Lee's interests as well.

Third, the Trust Agreement expressly provided that the documents executed by the Trustee "shall be binding and conclusive upon [NYL] and upon all persons interested in this Trust." [CR 778.] The above-referenced provisions of the Trust Agreement, which was signed by both Lee and the Trustee, make it clear that Lee was assigning to the Trustee all of his rights under the Policies, including his right to assert the claims at issue in this action.

Simply put, Lee was in privity with the Trustee for res judicata purposes.

**E.**     **<u>Lee Relinquished All of His Rights with Respect to the Policies.</u>**

Lee seemingly does not dispute the applicability of res judicata to his claims for breach of contract and declaratory judgment.[12] Lee nevertheless contends, however, that he did not relinquish to the Trustee his extra-contractual claims for alleged violations of the DTPA and the Texas Insurance Code, which are "separate and independent" from his breach-of-contract claim. [Appellant's Brief at 11-12.] Merely because extra-contractual claims can be asserted with or without a breach-of-contract claim does not mean that Lee may now prosecute his extra-contractual claims; in fact, to the extent the provisions of the Trust Agreement did not serve to transfer those claims to the Trustee, Lee relinquished those claims in order to effectuate the Trust's purposes.

Through the Trust Agreement, Lee established an irrevocable life insurance trust, which "provides a potential means of avoiding estate taxes by transferring ownership of a life insurance policy to the trust so the policy proceeds are not included in the decedent's estate." *See Randall v. Goodall & Davison, P.C.*, No. 03-12-00005-CV, 2013 WL 3481518, at *1 (Tex. App.--Austin July 2, 2013, pet. denied). In order to avoid the inclusion of the Policies' proceeds in his gross estate, Lee had to ensure that he did not possess "at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person," of

---

[12] Indeed, one wonders how Lee could assert a breach-of-contract claim in light of his assignment of the Policies to the Trustee.

the Policies. 26 U.S.C. § 2042; *see also Estate of Leder v. C.I.R.,* 893 F.2d 237, 242-43 (10th Cir. 1989) (concluding that an insured who "never held any ownership, economic, or other contractual rights in the policy" did not have any "incidents of ownership" under section 2042). By regulation, "incidents of ownership" is "not limited in its meaning to ownership of the policy in the technical legal sense" and generally refers "to the right of the insured or his estate to the economic benefits of the policy." 26 C.F.R. § 20.2042-1(c)(2).

As such, at the time he formed the Trust, Lee had an incentive to ensure that he surrendered each and every right he had in the Policies and did not retain any interests whatsoever in or with respect to them. As part of his efforts to effectuate this goal, Lee signed the Trust Agreement, in which he assigned to the Trustee "all his right, title, and interest in" the Policies, "relinquishe[d] all rights and powers in such policies of insurance which are not assignable," agreed that he "shall have no powers exercisable over any insurance policies which become owned by this Trust," and acknowledged that he "cannot do any act which may be deemed an incident of ownership of the policies." [CR 778, 787.] Lee also authorized the Trustee (among other powers) "to do all such acts, take all such proceedings, and to exercise all rights and privileges, although not hereinbefore specifically mentioned, with relation to any such property." [CR 786.]

In the Amended Petition, Lee complains of misrepresentations allegedly made by Rogers in 1989, which was after NYL had issued all of the Policies, regarding whether the Policies would, following his payment of an additional $238,188.15, remain in effect for the remainder of his life. [CR 719.] Of course, the only way Lee could complain of those alleged misrepresentations is because he was the owner of the Policies, and his assertion of his claims in this action constitutes an impermissible "incident of ownership" of the Policies.[13]

All told, Lee's creation of the Trust deprived him of standing to assert his claims, whether for breach of contract or to recover extra-contractual damages, in this action.

**F.    Lee's Claims Were Raised, and Disposed of, in the Willson Action.**

Third, this action is based on the same claims that were raised, and disposed of, in the Willson Action. In the Willson Complaint, the class plaintiffs alleged that NYL had fraudulently induced and deceived the class members into purchasing and maintaining life insurance policies based on false and misleading sales presentations, including alleged misrepresentations regarding the premium

---

[13] In fact, Lee has taken inconsistent positions in this action regarding his continued ownership of claims relating to the Policies. Even though he transferred the Policies (and his rights thereunder) to the Trustee in June 1991, Lee filed this action in his own name only, and he asserted in the Petition that (1) he had paid "all applicable premiums [for the Policies] for the following years as they became due," (2) he had received notice from NYL in May 2012 that the Policies had lapsed due to unpaid premiums, and (3) he had "sustained a loss of the insurance coverage to which he was entitled along with all of the consideration paid for the Policies and their expected cash value." [CR 6-7, 9.] Then, in the Amended Petition, Lee alleged a breach-of-contract claim arising out of the lapse of the Policies and sought a declaratory judgment that the Policies had not lapsed and must be construed in his favor. [CR 721-22.]

offset arrangement, which allowed policyowners to use accumulated dividend values from a whole life policy to pay all or part of the required premiums. [CR 93-113.] Based on these allegations, the class plaintiffs asserted causes of action for breach of contract, fraud, negligent misrepresentation, violations of the New York deceptive trade practices law (General Business Law § 349), and unjust enrichment. [CR 124-34.]

In the Willson Final Judgment, the court defined (through its approval of the as-amended Settlement Agreement) the "Released Transactions" as "the marketing, solicitation, … purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the Policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies," provided that the Class Members were releasing NYL and the other released parties (including agents such as Rogers) from all claims stemming in any way from the Released Transactions, and (3) enjoined the Class Members from prosecuting claims in any forum against NYL and the other released parties based on the Released Transactions. [CR 328, 366-70.] More specifically, the Willson Final Judgment released the claims of all Class Members arising out of, or relating to, "(c) the number of out-of-pocket payments that would need to be paid for a life insurance policy or the Policies; (d) the ability to keep or

not to keep the Policies In-Force based on a fixed number and/or amount of premium payments (less than the number and/or amount of payments required by the terms of the Policies), and/or the amount that would be realized or paid under the Policies based on a fixed number and/or amount of cash payments (less than the number and/or amount of payments required by the terms of the Policies), whether in the form of (i) cash value ... ; [and] (j) the rate of return on premiums paid in terms of cash value or cash surrender value." [CR 367-69.]

Lee's claims in this action fit squarely within the claims that were alleged, and released, in the Willson Action. Lee's primary (if not sole) contention is that Rogers allegedly misrepresented in 1989 that Lee could fully pay the premiums on the Policies for $238,188.15 and, after he made such payments, the Policies would remain in effect for his lifetime. [CR 719.] Based on this factual allegation, Lee asserted claims in the Amended Petition for negligence, violations of the DTPA, violations of the Texas Insurance Code, breach of contract, and declaratory judgment, which are akin to the claims in the Willson Complaint. In fact, the Federal Court held that the alleged misrepresentations complained of by Lee fell "squarely within the type of misrepresentations listed in the *Willson* release" [CR 42], and other courts across the country have reached the same result in addressing comparable claims. *See, e.g., Appleby v. Andreasen,* 758 N.W.2d 615, 620-21 (Neb. 2008) (holding that the Willson Final Judgment barred claims for breach of

contract, negligence, breach of fiduciary duty, misrepresentation, and negligent supervision, even though the premium payments at issue were made after the Class Period); *New York Life Ins. Co. v. Griffin,* 794 So. 2d 1072, 1077 (Ala. 2001) (holding that the Willson Final Judgment barred claims for fraud and breach of contract).[14]

For example, in *Griffin*, the plaintiff alleged that NYL's agent told him that, if he made a $42,104.78 premium payment on his whole life policy, it "would be the only money due and payable on this life insurance policy and that this sum would be adequate to fund the policy for the balance of the plaintiff's life." *Griffin,* 794 So. 2d at 1075. The trial court denied NYL's motion for summary judgment, but the Supreme Court of Alabama reversed, holding that the plaintiff was bound by the terms of the Willson Final Judgment with respect to these allegations. *Id.* at 1076-77. The same result is appropriate here, and the Court should thus affirm the summary judgment in NYL's favor.

### G.    Lee's Complaints Regarding Notice Are Without Merit.

Next, Lee contends that reversal is required because he did not receive notice of the Willson Action or the Willson Final Judgment. [Appellant's Brief at 15-16.] This argument fails for a variety of reasons. First, Lee did not receive

---

[14] *See also Fluid Disposal Specialties, Inc. v. New York Life Ins. Co.*, C.A. No. 02-1145, 2003 WL 25909423, at *2-4 (W.D. La. Mar. 28, 2003); *Manji v. New York Life Ins. Co.*, 945 F. Supp. 919, 923-24 (D.S.C. 1996); *New York Life Ins. Co. v. Robinson*, 735 So. 2d 463, 467-68 (Ala. 1999).

notice because, as demonstrated above, he had transferred the Policies, and all of his rights thereunder, to the Trustee and had requested NYL to recognize the Trustee as the new owner of the Policies and the recipient of all related communications.  [CR 778-90, 792.]  Consistent with this ownership change and instruction, the parties to the Willson Action sent the Class Notice and a post-settlement notice regarding the Class Members' rights to the Trustee, as the owner of record of the Policies, at the address Lee and the Trustee had provided to NYL for the Trustee.  [CR 791-92, 827.]  There is no reason to think the Trustee did not receive actual notice, as these notices were not returned as undelivered or undeliverable.  [CR 827.]  Lee is bound by the Willson Final Judgment because he is in privity with the Trustee, and he does not (because he cannot) cite any cases requiring that notice be given to both class members and those parties who are in privity with class members.[15]

Moreover, summary judgment would be appropriate even if neither the Trustee nor Lee actually received these notices.  Importantly, neither New York

---

[15] In fact, Lee's analysis improperly renders meaningless the well-settled precept that res judicata applies to those individuals "in privity" with a party to the prior action.  *See New Mexico ex rel. King v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1346, 1355 (D.N.M. 2013) ("If the Court were to accept Plaintiff's argument that the specific party defending against res judicata must have been a party to the previous action in order to have an opportunity to litigate its claims, it would essentially gut the 'or in privity' language for the identity of the parties' requirement, thus rendering that element meaningless.").

class action notice rules[16] nor due process require actual receipt of the individual notice by each and every possible class member; rather, the parties need only provide the best notice practicable.[17] *See Michels v. Phoenix Home Life Mut. Ins. Co.,* No. 95/5318, 1997 WL 1161145, at \*16 (N.Y. Sup. Ct. Jan. 7, 1997); *see also Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied*, 488 U.S. 1005 (1989); *In re Prudential Securities, Inc. Ltd. Partnerships Litigation,* 164 F.R.D. 362, 368 (S.D.N.Y.) (holding that due process does not require that every class member receive actual notice if reasonable means are chosen that are likely to inform the persons affected), *aff'd*, 107 F.3d 3 (2d Cir. 1996), *cert. denied*, 521 U.S. 1119 (1997).

As the court in the Willson Action found, the parties gave the Class Members (such as the Trustee) notice that satisfied New York law and due process. The parties to the Willson Action sent notice, in the form directed by the court, to nearly three million class members at their last known address by first-class mail.

---

[16] As Texas courts have recognized, the sufficiency of notice is determined under the rules of the sister state issuing the judgment--here, New York. *See, e.g.*, *Hill Country Spring Water v. Krug*, 773 S.W.2d 637, 639 (Tex. App.--San Antonio 1989, writ denied) (observing that the validity of an out-of-state judgment "is controlled by the law of" such state). The cases on which Lee relies from the United States Court of Appeals for the Fifth Circuit [Appellant's Brief at 15-16] are neither controlling nor instructive.

[17] This is consistent with the preeminent case concerning the adequacy of class notice to absent class members. *See Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (holding that due process is met through "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

[CR 80-81.] The parties also caused notice, in the form directed by the court, to be published in *The Wall Street Journal*, *USA Today*, the national edition of *The New York Times*, the daily newspapers with the largest circulation in each of the 50 states and the District of Columbia, including *The Dallas Morning News*, and the 20 newspapers with the highest daily circulation in the country, unless such newspapers had already been targeted for publication as the highest circulation newspapers in their respective areas. [CR 81, 427.] In total, the notice appeared in newspapers with an average aggregate daily circulation of approximately 22 million. [CR 81.] Moreover, between NYL's announcement of the proposed settlement of the Willson Action to the public in mid-August 1995 and the settlement hearing on November 15, 1995, nearly 200 articles and opinion pieces regarding the settlement appeared in newspapers and magazines across the county, and news of the settlement was the subject of television and radio broadcasts. [CR 81.]

Indeed, courts have repeatedly recognized that supplementing individual notice with publication notice represents an appropriate balance between protecting class members and making class actions workable. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (finding that mailing to easily ascertainable class members constituted the "best notice practicable"); *In re Prudential Securities, Inc. Ltd. Partnerships Litigation,* 164 F.R.D. at 368 (providing for

notice through mailing to reasonably ascertainable class members and publication).

Accordingly, the methods of notice in the Willson Action constituted due, adequate, and reasonable notice to all Class Members and satisfied the requirements of New York law and due process.[18] *See Elite Sportswear Products, Inc. v. New York Life Ins. Co.*, C.A. No. 05-CV-5181, 2006 WL 3052703, at *6 (E.D. Pa. Oct. 24, 2006) ("The notice given for the *Willson* settlement exceeded the requirements of due process."), *aff'd*, 270 F. App'x 153 (3d Cir. 2008). This is true regardless of whether the Trustee actually received notice. *See Williams v. Marvin Windows and Doors*, 790 N.Y.S.2d 66, 67-68 (N.Y. App. Div. 2005) (rejecting the plaintiffs' claim that they never received notice of a class action settlement where they failed to demonstrate that the defendants did not act with reasonable diligence in complying with the court-ordered method of providing notice to the class).

Second, and independent of the foregoing, Lee's complaints regarding notice constitute an impermissible collateral attack on the Willson Final Judgment. Courts distinguish between void judgments, which may be set aside by a collateral attack, and voidable judgments, which must be challenged by a valid direct attack. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012) ("It is well settled

---

[18] This extensive notice to the Class Members thus renders Lee's reliance [Appellant's Brief at 15] on *Johnson v. General Motors Corp.*, 598 F.2d 432, 437-38 (5th Cir. 1979), misplaced, as no notice of any kind was given to the absent class members in that case.

that a litigant may attack a void judgment directly or collaterally, but a voidable judgment may only be attacked directly."); *James Mills Orchards Corp. v. Frank*, 244 N.Y.S. 473, 475 (N.Y. Sup. Ct. 1930) ("Such judgment is not void upon its face, but merely voidable and is not subject to such collateral attack."). A judgment is void if it is shown that the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court." *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (per curiam). Lee has not claimed the Willson Final Judgment is void, and his complaints regarding notice may only be raised through a direct attack in the Willson Action. In the meantime, however, the District Court properly gave, in accordance with the "full faith and credit" clause of the United States Constitution, the same force and effect to the Willson Final Judgment as it would give to one of its own judgments. *See* U.S. Const. art. IV, § 1.

Finally, the notices that the parties in the Willson Action sent to the Class Members (such as the Trustee) were adequate to inform them of their rights and the claims (such as the extra-contractual claims akin to those asserted herein by Lee) that were being released. For example, the Class Notice (1) described the claims asserted in the Willson Complaint, including the challenges to the premium offset proposal, which was NYL's method of using dividends to pay premiums on

whole life policies, (2) set forth the benefits available to the Class Members and their right to opt out of the settlement, (3) stated that "all claims that have been or could have been asserted in this lawsuit with respect to any Policy for which a Class Member has not been excluded will be dismissed on the merits and with prejudice," and (4) detailed the release as follows:

> Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and hereby release and discharge the Releasees from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against the Releasees in the Actions or in any other court action or before any administrative body (including any state Department of Insurance or other regulatory commission), tribunal or arbitration panel on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions and servicing relating to the Released Transactions ….

[CR 406, 408-13, 415.]  As such, the Class Notice adequately informed the Trustee of the claims that were being released, and Lee's arguments to the contrary [Appellant's Brief at 16-17] are without merit.

## CONCLUSION

NYL respectfully requests that the Court affirm the District Court's entry of summary judgment in NYL's favor on all of Lee's claims, with all costs of appeal taxed against Lee.

Respectfully submitted,

By: /s/ Andrew C. Whitaker
    Andrew G. Jubinsky
    State Bar No. 11043000
    andy.jubinsky@figdav.com
    Andrew C. Whitaker
    State Bar No. 21273600
    andrew.whitaker@figdav.com
    Ryan K. McComber
    State Bar No. 24041428
    ryan.mccomber@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

**COUNSEL FOR APPELLEE
NEW YORK LIFE INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served electronically via the Court's E-Service system on this 9th day of December, 2015, on the following:

James A. Holmes
THE LAW OFFICE OF JAMES HOLMES, P.C.
212 South Marshall
Henderson, Texas 75654

John R. Mercy
MERCY CARTER TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503

Craig Brinker
LaToyia Pierce
WILSON, ELSER, MOSKOWITZ,
  EDELMAN & DICKER, LLP
901 Main Street, Suite 4800
Dallas, Texas 75202

/s/ Andrew C. Whitaker
Andrew C. Whitaker

## CERTIFICATE OF COMPLIANCE

According to the word counter used by Microsoft Word, this response contains 7,963 words and thus complies with the word-count limit specified by Tex. R. App. P. 9.4(i)(2)(B).

/s/ Andrew C. Whitaker
Andrew C. Whitaker