ACCEPTED
06-15-00037-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/17/2015 10:09:13 AM
DEBBIE AUTREY
CLERK

No. 06-15-00037-CV

IN THE COURT OF APPEALS
FOR THE SIXTH DISTRICT OF TEXAS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
12/17/2015 10:09:13 AM
DEBBIE AUTREY
Clerk

MICHAEL D. LEE,

*Appellant,*

vs.

THE ROGERS AGENCY, C. MICHAEL ROGERS, AND
NEW YORK LIFE INSURANCE COMPANY,

*Appellees.*

On Appeal from Cause No. 2014-0615-B
In the 124th Judicial District Court of Gregg County, Texas

## APPELLEE BRIEF OF
## THE ROGERS AGENCY AND C. MICHAEL ROGERS

D. Craig Brinker
Texas State Bar No. 03033200
Lana P. Beverly
Texas State Bar No. 24075377

WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
901 Main Street, Suite 4800
Dallas, Texas 75202
(214) 698-8000 (Telephone)
(214) 698-1101 (Facsimile)

**COUNSEL FOR APPELLEES
THE ROGERS AGENCY AND
C. MICHAEL ROGERS**

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT/PLAINTIFF:**

Michael D. Lee

**COUNSEL:**

**TRIAL COUNSEL**

James A. Holmes
State Bar No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
212 South Marshall
Henderson, Texas 75624
(903) 657-2800 (Telephone)
(903) 657-2855 (Facsimile)
*jh@JamesHolmesLaw.com*

**APPELLATE COUNSEL**

John R. Mercy
State Bar No. 13947200
MERCY CARTER TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 (Telephone)
(903) 794-1268 (Facsimile)
*jmercy@texarkanalawyers.com*

**APPELLEES/DEFENDANTS:**

The Rogers Agency and
C. Michael Rogers

**COUNSEL:**

**TRIAL COUNSEL**

D. Craig Brinker
State Bar No. 03033200
LaToyia Watkins Pierce
State Bar No. 24049109
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER, LLP
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202

2

(214) 698-8000 (Telephone)
(214) 698-1101 (Facsimile)
*craig.brinker@wilsonelser.com*
*latoyia.pierce@wilsonelser.com*

**APPELLATE COUNSEL**

D. Craig Brinker
State Bar No. 03033200
Lana P. Beverly
State Bar No. 24075377
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER, LLP
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202
(214) 698-8000
(214) 698-1101 (Facsimile)
*craig.brinker@wilsonelser.com*
*lana.beverly@wilsonelser.com*

New York Life Insurance Company    **TRIAL AND APPELLATE COUNSEL:**

Andrew Jubinsky
State Bar No. 11043000
Andrew C. Whitaker
State Bar No. 21273600
Ryan McComber
State Bar No. 24041428
Figari & Davenport, LLP
Bank of America Plaza
901 Main Street, Suite 3400
Dallas, Texas 75202
(214) 939-2000 (Telephone)
(214) 939-2090 (Facsimile)
*andy.jubinsky@figdav.com*
*andrew.whitaker@figdav.com*
*ryan.mccomber@figdav.com*

3

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.     Lee Purchases Three Policies from NY Life . . . . . . . . . . . . . . . . . .10

    B.     Lee Creates and Assigns to a Trust<br>          All of His Interest in the Policies . . . . . . . . . . . . . . . . . . . . . . . . . .11

    C.     The Willson Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    D.     The Willson Action Settles, and Notice is Sent to the Trustee . . . . . 14

    E.     The Willson Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

    F.     Lee Files Suit Against Defendants . . . . . . . . . . . . . . . . . . . . . . . . .18

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A.     Lee Lacks Standing to Pursue His Extra-Contractual Claims . . . . . 22

    B.     Lee's Claims Are Barred by the Doctrine of *Res Judicata* . . . . . . . . .26

         1.     The Willson Judgment Constitutes a Prior Final Judgment<br>                on the Merits From a Court of Competent Jurisdiction . . . . . .27

2.  Although Lee Was Not a Party to the Willson Judgment, He Was In Privity with the Trustee, Who Was a Party to the Willson Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

3.  Lee's Claims Were Raised and Disposed of in the Willson Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

C.  Lee's Claims Regarding Notice Lack Merit . . . . . . . . . . . . . . . . . . 34

1.  Lee Was Not A Class Member Required to Be Noticed . . . . .35

2.  Notices Were Adequate to Inform Class Members of Their Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . 41

# INDEX OF AUTHORITIES

## Cases

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996) . . . . . . . . 27, 28, 29, 30

*Appleby v. Andreasen,* 758 N.W.2d 615 (Neb. 2008) . . . . . . . . . . . . . . . . . . 33, 34

*Board of Adjustment v. Patel,* 887 S.W.2d 90
        (Tex. App.—Texarkana 1994, reh'g overruled) . . . . . . . . . . . . . . . . . . . 22

*Browning v. Placke*, 698 S.W.2d 362 (Tex. 1985). . . . . . . . . . . . . . . . . . . . 38

*Buechel v. Bain,* 766 N.E.2d 914 (N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . 29

*Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430 (Tex. 2007). . . . . . . . .27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . 37

*Elite Sportswear Products, Inc. v. New York Life Ins. Co.,*
        2006 WL 3052703 (E.D. Pa. Oct. 24, 2006), *aff'd,*
        270 F. App'x 153 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .37

*Estate of Leder v. C.I.R.,* 893 F.2d 237 (10th Cir. 1989) . . . . . . . . . . . . . . . . .25

*Freeman v. Cherokee Water Co.,*
        11 S.W.3d 480 (Tex. App.—Texarkana 2000, pet. denied) . . . . . . . . . . . . .28

*Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794 (Tex. 1992) . . . . . . . .29

*Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517 (Tex. 1984) . . . . . . . . . . 26

*Gramatan Home Investors Corp. v. Lopez*, 386 N.E.2d 1328 (N.Y. 1979) . . . . . .27

*Grimm v. Rizk,*
        640 S.W.2d 711 (Tex. App.—Houston [14th Dist.] 1982,
        writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 50 (Tex. 2006) . . . . . . . . . .26

*Hill Country Spring Water v. Krug,*
    773 S.W.2d 637 (Tex. App.—San Antonio 1989, writ denied) . . . . . . . . . .35

*In re P.D.D.,* 256 S.W.3d 834 (Tex. App.—Texarkana 2008) . . . . . . . . . . . . .26, 27

*In re Prudential Securities, Inc. Ltd. Partnerships Litigation,*
    164 F.R.D. 362 (S.D.N.Y.), aff'd, 107 F.3d 3 (2d Cir. 1996),
    cert. denied, 521 U.S. 1119 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*James Mills Orchards Corp. v. Frank,* 244 N.Y.S. 473 (N.Y. Sup. Ct. 1930) . . . 38

*John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n,*
    354 S.W.3d 843 (Tex. App.—Austin 2011, pet. denied) . . . . . . . . . . . . . .24

*Lesikar v. Moon,*
    2014 WL 4374117 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) . . .30

*Michels v. Phoenix Home Life Mut. Ins. Co.,*
    1997 WL 1161145 (N.Y. Sup. Ct. Jan. 7, 1997) . . . . . . . . . . . . . . . . . . . . 36

*Monahan v. N.Y.C. Dep't of Corrections,*
    214 F.3d 275 (2d Cir.), *cert. denied,* 531 U.S. 1035 (2000) . . . . . . 27, 28, 29

*Natividad v. Alexsis, Inc.,* 875 S.W.2d 695 (Tex. 1994) . . . . . . . . . . . . . . . . . 21

*New York Life Ins. Co. v. Griffin,* 794 So. 2d 1072 (Ala. 2001) . . . . . . . . . . . . 34

*Nixon v. Mr. Prop. Mgmt Co.,* 690 S.W.2d 546 (Tex. 1985) . . . . . . . . . . . . . . .21, 22

*PNS Stores, Inc. v. Rivera,* 379 S.W.3d 267 (Tex. 2012) . . . . . . . . . . . . . . . . .38

*Randall v. Goodall & Davison, P.C.,*
    2013 WL 3481518 (Tex. App.—Austin July 2, 2013, pet. denied) . . . . . . .24

*Smith v. Huston,*
    251 S.W.3d 808 (Tex. App.—Fort Worth 2008, pet. denied) . . . . . . . .27, 28

*Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471 (Tex. 1995) . . . . . . . . . . . . . . . . .22

*State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696 (Tex. 1996) . . . . . . . . . .24

*Taylor v. Sturgell*, 553 U.S. 880 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29, 30

*Tex. Farm Bureau Underwriters v. Graham,*
    450 S.W.3d 919 (Tex. App.—Texarkana 2014, pet. denied) . . . . . . . . . . . . . 22

*Weigner v. City of New York,*
    852 F.2d 646 (2d Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989) . . . . . . . .36

*Williams v. Marvin Windows and Doors,*
    790 N.Y.S.2d 66 (N.Y. App. Div. 2005) . . . . . . . . . . . . . . . . . . . . . . . 37, 38

## **Other Authorities**

26 C.F.R. § 20.2042-1(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

26 U.S.C. § 2042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

N.Y. C.P.L.R. 901(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Tex. R. Civ. P. 166a(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

U.S. Const. art. IV, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# STATEMENT OF THE CASE

## *Nature of the Case*

In March 2014, Appellant Michael D. Lee ("Appellant" or "Lee") filed suit against The Rogers Agency and C. Michael Rogers (collectively "Rogers") and New York Life Insurance Company ("NY Life") (collectively "Appellees" or "Defendants") arising out of alleged misrepresentations Rogers made regarding life insurance policies issued to Lee by NY Life from 1985 to 1987 (CR 5-10).[1]

## *Course of Proceedings*

NY Life filed a Notice of Removal to Federal Court on April 23, 2014, alleging Rogers was improperly joined. (CR 26-34).[2] The Federal Court remanded the case to the Trial Court (CR 36-45).[3] After the case was remanded, NY Life filed a Motion for Summary Judgment and supplements thereto, to which Rogers adopted, joined, and incorporated by reference all arguments and authorities contained therein, arguing Lee's claims against Defendants were barred by the doctrine of *res judicata*. (CR 50-700, 703-16, 726-32). Lee filed a Response to the Motion for Summary Judgment, to which NY Life filed a Reply. (CR 737-95, 815-28). Lee later filed a Sur-Reply to NY Life's Response. (CR 832-38).

## *Trial Court Disposition*

A hearing on Defendants' Motion for Summary Judgment was held on February 4, 2015. (RR 1-37). After the hearing, the 124th Judicial District Court of Gregg County, Texas entered an order granting Defendants' Motion for Summary Judgment on June 26, 2015. (CR 1074). Lee then appealed the Trial Court's ruling to the Texas Sixth Court of Appeals (CR 1075-76).

---

[1] The Clerk's Record, filed on August 12, 2015, will be cited as "CR." The Supplemental Clerk's Record, filed on September 2, 2015, will be cited as "SCR." The Reporter's Record from the February 4, 2015, motion for summary judgment hearing will be cited as "RR."

[2] "Federal Court" shall refer to the United States District Court for the Eastern District of Texas, Tyler Division, the Honorable Michael Schneider presiding, which issued the Order Granting Lee's Motion for Remand on October 14, 2014. (CR 36-45).

[3] "Trial Court" shall refer to the 124th Judicial District Court of Gregg County, Texas, the Honorable Alfonso Charles presiding.

## ISSUE PRESENTED

The Trial Court properly granted Defendants' Motion for Summary Judgment on the grounds that the doctrine of *res judicata* applied to bar all of Lee's claims against Defendants.

## STATEMENT OF FACTS

### A. Lee Purchases Three Policies from NY Life

Between 1985 and 1987, Lee, a certified public accountant, purchased three whole life insurance policies from NY Life, each with an original face value amount of $1,000,000 (the "Policies"), with the assistance of Rogers, an insurance agent with NY Life. (CR 6, 14, 718, 458-525). The Policies NY Life issued to Lee are as follows:

| Effective Date | Policy No. | Original Face Amount |
|---|---|---|
| March 12, 1985 | 37 958 331 | $1,000,000.00 |
| April 12, 1986 | 42 161 943 | $1,000,000.00 |
| April 24, 1987 | 38 981 496 | $1,000,000.00 |

(CR 458-525, 749). Lee elected to apply the dividends generated by the Policies towards the purchase of paid up additional insurance, which was itself eligible for dividends. (CR 762).

Lee asserts that, in 1989, he asked Rogers how much he needed to pay NY Life in order to have the Policies made fully paid up without any additional premiums due. (CR 719, 750). According to Lee, Rogers promised that if Lee

could fully pay the premiums on the Policies for $238,188.15, Lee would not owe any additional premiums, and the Policies would remain in effect for his lifetime. (CR 7, 15, 719). Lee subsequently provided Rogers with two checks totaling $238,188.15 to remit to NY Life. (CR 7, 15, 719, 750, 757-58).

**B.     Lee Creates and Assigns to a Trust All of His Interest in the Policies**

In June 1991, approximately four years after Lee purchased the last of his three Policies, he, as the Settlor, and Richard A. Dial (the "Trustee"), as the Trustee, entered into a Trust Agreement for the Michael Dee Lee Irrevocable Insurance Trust (the "Trust"), in which Lee assigned to the Trustee "all his right, title, and interest in and to" the Policies, and Lee further relinquished any rights related to the Policies he could not convey to the Trustee. (CR 778-90). Specifically, the Trust Agreement provided:

> 3.     Rights in Policy of Insurance. *The Trustee is hereby vested with all right, title, and interest in and to such policies of insurance*, and the Trustee is authorized and empowered to exercise and enjoy, for the purposes of the Trust herein created, and as absolute owner of such policies of insurance, all the options, benefits, rights, and privileges under such policies, including the right to borrow upon such policies, and to pledge them for a loan or loans or to cancel them. *The insurance companies which have issued such policies are hereby authorized and directed to recognize the Trustee as absolute owners of such policies of insurance, and as fully entitled to all options, rights, privileges, and interests under such policies*; and any receipts, releases, and other instruments executed by the Trustee in connection with such policies shall be binding and conclusive upon the insurance companies and upon all persons interested in this Trust. *The Settlor hereby relinquishes all rights and powers in such policies of insurance which are not assignable, and will, at the request of the*

11

*Trustee, execute all other instruments reasonably required to effectuate this relinquishment.* (CR 750, 778).

Additionally, the Trust Agreement expressly divested Lee of any and all rights he would otherwise have had in the Policies, stating:

"Notwithstanding the above, *Settlor shall have no powers exercisable over any insurance policies which become owned by this Trust,* including but not limited to the power to change beneficiaries, the power to cancel policies, or the power to utilize the polices as collateral, so that *he cannot do any act which may be deemed an incident of ownership of the policies.*" (CR 787).

The Trust Agreement further provided that the Trust was irrevocable and Lee was irrevocably waiving various rights he otherwise would have had:

17. *Irrevocability.* This Trust shall be irrevocable, and the Settlor hereby expressly waives all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source the Settlor may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke, or terminate the Trust, or any of the terms of this agreement, in whole or in part. To more fully express his intention, the Settlor hereby declares that, by this instrument, the Settlor relinquishes absolutely and forever all his possession or enjoyment of, or right to, the income from the Trust property, and all his rights and powers, whether alone or in conjunction with others, to designate the persons who shall possess or enjoy the Trust property, or the income therefrom. (CR 788-89).

Over the following years, some of the required premiums for the Policies were paid through their Automatic Premium Loan provisions, which resulted in the establishment of loans against the Policies' cash values to pay the premiums due and any interest that had accrued on those loans. (CR 763). In 2000 and 2001, the Trustee signed forms instructing NY Life to apply the dividends and paid-up

12

additions to pay the annual premiums, which served to reduce the cash value and death benefit of the Policies and raised the possibility that, in the event those values ran out, additional out-of-pocket premium payments would be required to keep the Policies in force. (CR 762).

## C. The Willson Action

Several years after Rogers' alleged misrepresentations forming the basis of Lee's claims against Defendants, the following case was pending against NY Life in New York: *Willson v. New York Life Ins. Co.*, et al., Index No. 94/127804 (Sup. Ct. N.Y. Co.) (the "Willson Action"), which consolidated four separate nationwide class actions filed in 1994 and 1995 by NY Life policy owners. (CR 55, 79, 86-136). The consolidated complaint in the Willson Action alleged a broad range of improper life insurance sales practices like those asserted by Lee in the case at hand, including misrepresentations: (1) regarding the future cash value of a policy, and (2) that only one or a limited number of premiums would be required to maintain the policies in force. (CR 55, 86-138).

Specifically, one of the allegations asserted in the consolidated complaint arose out of the premium offset arrangement, which allowed policy owners to use accumulated dividend values from a whole life policy to pay all or part of the required premiums. (CR 93-113). The class plaintiffs alleged NY Life had fraudulently induced and deceived the class members into purchasing and

maintaining life insurance policies based on false and misleading sales presentations, including alleged misrepresentations regarding the premium offset arrangement. As a result, the class plaintiffs asserted causes of action for breach of contract, fraud, negligent misrepresentation, violations of the New York deceptive trade practices law, and unjust enrichment. (CR 124-34).

Ultimately, on July 28, 1995, the parties in the Willson Action executed a Stipulation of Settlement (the "Settlement Agreement"). (CR 55, 80, 137-217). On July 31, 1995, the court in the Willson Action signed the Findings and Order Confirming Certification of the Class for Settlement Purposes, Directing Issuance of Class Notice and Scheduling a Settlement Hearing (the "July 1995 Order"). (CR 218-33). The July 1995 Order, which certified a nationwide class for settlement purposes only, found the Settlement Agreement was sufficient to warrant notice to members of the class, directed the forms and methods of such notice, and set forth procedures for the class members to use in excluding themselves from the class or objecting to the terms of the proposed settlement. (CR 80, 218-33.)

## D. The Willson Action Settles, and Notice is Sent to the Trustee

Pursuant to the July 1995 Order, the parties mailed the court-approved notice, a cover letter from NY Life, a question-and-answer brochure, and an individually customized statement of eligibility (the "Class Notice") to three million class members at their last known addresses by first class mail. (CR 56, 80-

81, 405-27, 826-28). The Class Notice regarding the Policies was mailed to the Trustee, as the owner of record of the Policies, at his last known address and was not returned as undelivered. (CR 56, 405-27, 826-28).

Pursuant to the July 1995 Order, the parties also caused to be published, in newspapers across the country, notice of the settlement of the Willson Action. (CR 81, 427). The Trustee did not request exclusion from the class before the October 31, 1995, deadline, and was not included on the court-approved list of individuals who properly asked to be excluded from the class. (CR 529-30, 546-700).

E. **The Willson Judgment**

On February 1, 1996, the New York court in the Willson Action issued its final judgment (the "Willson Judgment"), entering the Findings of Fact, Conclusions of Law, and Final Order and Judgment. (CR 56, 234-310). Among other things, the Willson Judgment: (1) held it had subject matter jurisdiction and personal jurisdiction over all class members, (2) found the class representatives adequately represented the class, (3) certified a settlement class (the "Settlement Class"), (4) held the Class Notice "constituted due, adequate and reasonable notice to all Class Members, and otherwise satisfy the requirements of due process," (5) approved the settlement as "fair, reasonable and adequate and in the best interests of the Class," and (6) and dismissed the Willson Action with prejudice and on the merits. (CR 256-67, 299, 306-07, 310). The Willson Judgment further provided the

15

Settlement Agreement and its terms as well as the Willson Judgment "shall forever be binding on, and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by, the plaintiffs and all other settlement Class Members, as well as their heirs, executors and administrators, successors and assigns." (CR 307-308.).

The Settlement Agreement authorized by the Willson Judgment defined the "Class Members" as "all persons or entities who have, or had at the time of the Policy's termination, an ownership interest in one or more Policies issued by New York Life at any time during the Class Period" and the "Class Period" as "the period from January 1, 1982 through December 31, 1994, inclusive." (CR 319-20). Additionally, "Released Transactions" was defined, in part, as:

> the marketing, solicitation, . . . sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of . . . any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies. (CR 328).

Under the Settlement Agreement incorporated in the Willson Judgment, Class Members were releasing NY Life and other released parties, including Rogers, from all claims stemming in any way from the Released Transactions and were precluded from pursuing a claim based on the Released Transactions. (CR 366-70). Specifically the Willson Judgment stated:

16

Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and release and discharge the Releasees from, any and all causes of action [and] claims . . . that have been, could have been, may be or could be alleged or asserted now or in the future . . . against the Releasees . . . on the basis of, connected with, arising out of, or related to . . . the Released Transactions, including without limitation . . . (ii) any or all of the acts, omissions, facts, matters, transactions, occurrences, or *any oral or written statements or representations* allegedly made in connection with or directly or indirectly relating to: (c) the number of out-of-pocket payments that would need to be paid for a life insurance policy; [and] (d) the ability to keep or not keep the policies in force based on a fixed number and/or amount of premium payments. . . . . (CR 366-367) (emphasis added).

The scope of the release contained in the Willson Judgment specifically included NY Life agents, such as Rogers, in its definition of "Releasees." (CR 328). In particular, paragraph 62 of the Willson Judgment states:

The parties have explained that their objective was to finally resolve this action and that New York Life could not agree to a settlement that did not release its agents because such a settlement would provide no finality, in that if dissatisfied policy owners sued New York Life agents, the agents would likely turn to New York Life for indemnity or contribution. The Court finds that (i) the need for finality necessitates release of New York Life's agents; (ii) the cooperation of agents will enhance the success of the ADR Process and it is therefore in no one's interest to automatically penalize agents . . . . (CR 287).

The Willson Judgment also contained a permanent injunction against further prosecution of these claims in any forum against any released party, including but not limited to Rogers, based on the Released Transactions (CR 308, 366-70).

17

In accordance with the terms of the Settlement Agreement, a post-settlement notice setting forth the Class Members' rights was also mailed to the Trustee, as the owner of record of the Policies, at his last known address and was not returned as undelivered or undeliverable. (CR 356-59, 857).

## F.    Lee Files Suit Against Defendants

Two of Lee's Policies lapsed for non-payment of premium in April of 2012, with the remaining cash value used to purchase extended term insurance that subsequently expired. Lee's third Policy was surrendered in 2013. (CR 761, 771). Lee alleges he was notified in May of 2012 that his Policies had lapsed due to unpaid premiums. (CR 7, 15, 719).

In March of 2014, Lee filed suit against Defendants, asserting claims of negligence and violations of both the Texas Deceptive Trade Practices Act ("DTPA") and Texas Insurance Code arising from Rogers' alleged misrepresentations regarding the Policies. (CR 5-10). He alleged in his Original Petition that Rogers falsely represented that, in the event Lee paid an additional $238,188.15 in premiums, he would not owe any additional premiums for the Policies, which would remain in effect for his lifetime. (CR 7).

NY Life removed the case to the Federal Court based on improper joinder, arguing Lee's claims against Rogers were barred by *res judicata* because of the Willson Judgment. (CR 26-34). Lee subsequently filed a Motion to Remand,

asserting his claims, which were purportedly based on the amount of the premiums needed to keep the Policies in force for the rest of his life, did not fit within the claims that were released in the Willson Judgment (CR 42). The Federal Court rejected this argument in an order dated October 14, 2014 (CR 36-45), stating:

> Rogers' alleged misrepresentations of which Lee complains falls squarely within the type of misrepresentations listed in the *Willson* release. Any claims arising from such misrepresentation against [Rogers]—as the agents of [NY Life]—were released in the *Willson* settlement. Thus, [NY Life] has met its heavy burden to show that "there is no reasonable basis for the district court to predict that the Lee might be able to recover against an in-state defendant." (CR 42) (internal citations omitted).

However, the Federal Court ultimately remanded the case to the Trial Court under the common defense rule, which requires a remand "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants." (CR 43). The Federal Court found *res judicata* not only barred all of Lee's claims against Rogers, but it also barred all of Lee's claims against NY Life, concluding that there was "no improper joinder but only an ill-founded case as to all defendants." (CR 45).

After the case was remanded to the Trial Court, NY Life filed a Motion for Summary Judgment on the threshold issue, arguing *res judicata* applied to all of Lee's claims against Defendants, to which Rogers joined, adopted, and incorporated by reference all of the arguments stated therein. (CR 50-700, 703-

19

705). Following the filing of the initial summary judgment motion, Lee filed an amended petition to assert an additional cause of action for breach of contract against NY Life and request a declaratory judgment relating to the Policies. (CR 717-724). NY Life supplemented its Motion for Summary Judgment to address these additional claims. (CR 706-13, 726-32). Rogers also filed a motion adopting and joining in the arguments made and authorities cited in NY Life's supplemental motion and further asserted the Willson Judgment not only applied to NY Life, but also to Rogers, as NY Life's agents. (CR 714-16).

On January 12, 2015, Lee filed his response to Defendants' motions for summary judgment. (CR 737-95). In part, he alleged, for the first time, he was not bound by the Willson Judgment because he transferred ownership of the Policies to the Trustee in 1991. (CR 738-41). The Trial Court heard Defendants' summary judgment motion on February 4, 2015. (RR 1-37). After the hearing, on June 26, 2015, the Trial Court signed an Order Granting Defendants' Motion for Summary Judgment, dismissing all of Lee's claims against Defendants with prejudice. (CR 1074). Lee filed a Notice of Appeal on July 20, 2015. (CR 1075-76).

## SUMMARY OF THE ARGUMENT

The Trial Court correctly granted summary judgment in favor of Defendants. As an initial matter, any extra-contractual claims Lee has or may have had against Defendants were either assigned or waived, and thus, he lacks standing to now

pursue these claims against Defendants.

Furthermore, the Willson Judgment bars all of Lee's claims against Defendants because all of the elements of *res judicata* are met. First, the Willson Judgment is a final judgment on the merits from a court of competent jurisdiction. Second, although Lee was not a Class Member, he was in privity with the Trustee, who was a Class Member in the Willson Action, satisfying the second element. Last, Lee's claims were raised, and disposed of, in the Willson Action. As such, the Trial Court properly found Lee's claims were barred by *res judicata*.

Finally, Lee's arguments regarding improper notice are without merit. Since Lee was not a Class Member, notice of the Willson Action and Willson Judgment were not required to be sent to him. Additionally, the parties to the Willson Action provided sufficient notice to the Class Members, including the Trustee, of their rights. Because Lee lacks any valid legal basis for his claims against Defendants, the Trial Court properly granted Defendants' summary judgment.

## STANDARD OF REVIEW

A summary judgment movant must show that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt Co.*, 690 S.W.2d 546, 549 (Tex. 1985). The Court's review of the summary judgment is *de novo*. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

21

When reviewing an appeal from the granting of a summary judgment, the Court must: (1) determine whether the movant carried its burden to show that no genuine issue of material fact existed, (2) accept the evidence favorable to the non-movant as true, and (3) indulge every reasonable inference in the non-movant's favor. *Nixon*, 690 S.W.2d at 548-49; *Tex. Farm Bureau Underwriters v. Graham*, 450 S.W.3d 919, 921-22 (Tex. App.—Texarkana 2014, pet. denied).

The reviewing court may consider only the evidence on file before the trial court at the time of the hearing. *Board of Adjustment v. Patel*, 887 S.W.2d 90, 92 (Tex. App.—Texarkana 1994, reh'g overruled). When, as in this case, a trial court's order granting summary judgment does not specify the grounds on which the trial court granted it, the reviewing court must affirm summary judgment if *any* of the summary judgment grounds are meritorious. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) (emphasis added).

## ARGUMENTS AND AUTHORITIES

The Trial Court appropriately found all of Lee's claims against Defendants were barred by the preclusive effect of the Willson Judgment, and this Court, too, should give effect to the Willson Judgment and find all of Lee's claims against Defendants to be prohibited by the doctrine of *res judicata*.

### A. Lee Lacks Standing to Pursue His Extra-Contractual Claims

As an initial matter, Lee argues his claims against Defendants for violations

of the DTPA and Texas Insurance Code are separate and independent from claims for contractual benefits, and he did not transfer these claims to the Trust when he assigned all of his right, title, and interest to the Policies. *See* Appellant's Brief, p. 11-12. Lee maintains the fact the Trust became the owner of the Policies did not foreclose his right to assert his claim as a "person" or "consumer" under the DTPA or Texas Insurance Code. *See id.*, p. 12. However, contrary to his contention, the fact extra-contractual claims can be asserted with or without a breach of contract claim has no bearing on Lee's ability to pursue any extra-contractual claims in this case. Whatever claims Lee may have had regarding the Policies were either assigned or waived, and thus, he has no standing to assert them against Defendants.

As stated above, under the terms of the Trust Agreement, the Trustee was the "absolute owner" of the Policies, entitled to all options, benefits, rights, privileges, and interests under the Policies. (CR 750). By executing the Trust Agreement, Lee (1) assigned all his "right, title, and interest in and to" the Policies to the Trustee, (2) "relinquishe[d] all rights and powers in such policies of insurance which are not assignable," (3) was divested of any and all rights he would otherwise had have in the Policies pursuant to the provisions of the Trust Agreement, and (4) was prohibited from doing any act which may be deemed an incident of ownership of the Policies. (CR 750, 778, 787). Thus, any and all rights

23

and claims Lee may have had under the Policies had in some manner been relinquished by virtue of his transfer of ownership to the Trustee.

Lee admits he transferred his ownership of the Policies to the Trust, but he nevertheless argues that although he could have transferred his extra-contractual claims to the Trust, he did not. *See* Appellant's Brief, p. 10, 12. As a general rule, causes of action are freely assignable. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 707 (Tex. 1996). Here, Lee has not proffered any reason or evidence, other than his own blanket statement, why his claims were not assigned and could not have been assigned in connection with the transfer of all of his rights, title, and interest in the Policies to the Trustee under the Trust Agreement. S*ee John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 354 S.W.3d 843, 849-50 (Tex. App.—Austin 2011, pet. denied) (noting the general rule that property rights may be assigned unless assignment is prohibited by statute or is contrary to public policy). Thus, Lee has not shown he retained any standing to pursue these claims against Defendants after his ownership interests were transferred.

Furthermore, through the Trust Agreement, Lee established an irrevocable life insurance trust, which "provides a potential means of avoiding estate taxes by transferring ownership of a life insurance policy to the trust so the policy proceeds are not included in the decedent's estate." *See Randall v. Goodall & Davison, P.C.*, 2013 WL 3481518, at *1 (Tex. App.—Austin July 2, 2013, pet. denied). In order to

24

avoid the inclusion of the Policies' proceeds in his gross estate, Lee had to ensure he did not possess "at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person," of the Policies. 26 U.S.C. § 2042; *see also Estate of Leder v. C.I.R.,* 893 F.2d 237, 242-43 (10th Cir. 1989) (concluding an insured who "never held any ownership, economic, or other contractual rights in the policy" did not have any "incidents of ownership" under section 2042). By regulation, "incidents of ownership" is "not limited in its meaning to ownership of the policy in the technical legal sense" and generally refers "to the right of the insured or his estate to the economic benefits of the policy." 26 C.F.R. § 20.2042-1(c)(2).

As such, at the time he formed the Trust, Lee had an incentive to ensure he surrendered each and every right he had in the Policies and did not retain any interests whatsoever in or with respect to them. As part of his efforts to effectuate this goal, Lee signed the Trust Agreement, assigning his rights in the Policies to the Trustee, relinquishing all rights and powers to the Policies, and banning him from any actions which may be deemed an incident of ownership in the Policies. (CR 778, 787). He also authorized the Trustee "to do all such acts, take all such proceedings, and to exercise all rights and privileges, although not hereinbefore specifically mentioned, with relation to any such property." (CR 786).

25

In his lawsuit, Lee complains of misrepresentations allegedly made by Rogers in 1989, after the Policies were issued, regarding whether they would, following his payment of an additional $238,188.15, remain in effect for the remainder of his life. (CR 719). The only way Lee could complain of those alleged misrepresentations is because he was the owner of the Policies, and his assertion of his claims in this action constitutes an impermissible "incident of ownership" of the Policies. In sum, Lee's creation of the Trust deprived him of standing to assert his claims, extra-contractual or not, against Defendants, as he assigned all of his rights and interests in the Policies to the Trustee.

## B.  Lee's Claims Are Barred by the Doctrine of *Res Judicata*

The Trial Court rightly held Lee's claims were barred by *res judicata*. *Res judicata*, or claim preclusion, prevents re-litigation of a claim or cause of action that has been finally adjudicated on the merits, as well as matters that, with the use of diligence, could or should have been litigated in a prior suit. *See Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 50, 58 (Tex. 2006); *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984); *In the Interest of P.D.D.*, 256 S.W.3d 834, 842 (Tex. App.—Texarkana 2008).

The bar of a claim by *res judicata* requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on

26

the same claims that were raised or could have been raised in the first action. *P.D.D.*, 256 S.W.2d at 842 (citing *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996)); *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2nd Cir. 2000); *Gramatan Home Investors Corp. v. Lopez*, 386 N.E.2d 1328, 1331 (N.Y. 1979) (a New York case noting *res judicata* "holds that, as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action."). In this case, all elements of *res judicata* are properly satisfied.

### 1.    The *Willson* Judgment Constitutes a Prior Final Judgment on the Merits From a Court of Competent Jurisdiction

The first element of *res judicata* is met because the Willson Judgment is a prior final judgment on the merits from a court of competent jurisdiction. The court in the Willson Action expressly found it possessed subject-matter jurisdiction and personal jurisdiction over all of the Class Members (CR 265-67), and it entered the Willson Judgment (CR 235-310), which disposed of all of their claims.

Moreover, a class action that proceeds to an agreed final judgment—like the Willson Judgment—is final for *res judicata* purposes. *See Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430, 450 (Tex. 2007) ("Basic principles of res judicata apply to class actions just as they do to any other form of litigation."); *Smith v. Huston*, 251 S.W.3d 808, 825 (Tex. App.—Fort Worth 2008, pet. denied)

27

("Res judicata applies to an agreed judgment."); *see also Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App.—Texarkana 2000, pet. denied) ("An agreed judgment of dismissal in settlement of a controversy is a judgment on the merits. It too is conclusive, not only on the matters actually raised and litigated, but it is also conclusive on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation."). The Willson Judgment thus meets the first element for *res judicata*, and Lee does not contend to the contrary in his Appellant Brief.

2. ***Although Lee Was Not a Party to the Willson Judgment, He Was In Privity with the Trustee, Who Was a Party to the Willson Judgment***

Next, the only element of *res judicata* that Lee attacks is the second element: the parties are identical or in privity. Lee argues he was neither a Class Member nor in privity with a Class Member as the reason for why *res judicata* should not apply to bar his claims. *See* Appellant's Brief, p. 12-15. However, although Lee was not a party to the Willson Judgment, he was indisputably in privity with the Trustee, who was a party to the Willson Judgment.

Although the general rule is that a person is not bound by a judgment in a lawsuit to which he was not a party, the doctrine of *res judicata* creates an exception to this rule by forbidding a subsequent suit arising out of the same subject matter of an earlier suit by those in privity with the parties to the original suit. *Amstadt*, 919 S.W.2d at 652-53; *see also Monahan*, 214 F.3d at 285

28

(observing that "literal privity is not a requirement for *res judicata* to apply," and a party is bound by a prior judgment if his interests were adequately represented by another vested with the authority of representation). The purposes of the exception are to ensure a defendant is not twice vexed for the same acts and to achieve judicial economy by precluding those who have had a fair trial from relitigating claims. *Amstadt*, 919 S.W.2d at 653.

The Texas Supreme Court has recognized *at least* three ways in which a person is in privity: (1) he can control an action even if he is not parties to it, (2) his interests can be represented by a party to the action, or (3) he can be a successor in interest, deriving their claims through a party to the prior action. *Id.* (citing *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex.1992); *Benson*, 468 S.W.2d at 363); *see also Buechel v. Bain*, 766 N.E.2d 914, 920 (N.Y. 2001) ("[P]rivity is "'an amorphous concept not easy of application' * * * and 'includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] coparties to a prior action.'"). Additionally, the United States Supreme Court has found privity: (1) based on "substantive legal relationships," such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor," and (2) where the non-party was "adequately represented by someone with the same interests who [wa]s a party" to the suit,

29

such as in "properly conducted class actions" and "suits brought by trustees, guardians, and other fiduciaries." *Taylor v. Sturgell*, 553 U.S. 880, 894-95 (2008).

Here, Lee is in privity with the Trustee for several reasons. First, Lee and the Trustee have several substantive legal relationships, as they are the Settlor and Trustee under the Trust Agreement, the assignor and assignee of the rights set forth in the Trust Agreement, and the preceding and succeeding owners of the Policies. *See Amstadt*, 919 S.W.2d at 653 ("Privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation.").

In the Trust Agreement, Lee, as the Settlor: (1) assigned to the Trustee, as the Trustee, "all [of Lee's] right, title, and interest" in the Policies, (2) vested the Trustee with "all right, title, and interest in and to" the Policies, and (3) authorized and directed NY Life to "recognize the Trustee as absolute owner of the [Policies], and as fully entitled to all options, rights, privileges, and interests under such [P]olicies." (CR 778). These legal relationships establish privity as a matter of law. *See Grimm v. Rizk*, 640 S.W.2d 711, 715 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding plaintiffs' claims were barred by *res judicata* by reason of the final judgment in a prior action brought by plaintiffs' trustee); *see also Lesikar v. Moon*, 2014 WL 4374117, at *6-8 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, pet. denied) (holding an individual's claims were barred in a subsequent action by his involvement as a trustee in a prior action).

30

Second, the named plaintiffs and the Trustee represented Lee's interests in the Willson Action. By definition, the named plaintiffs in the Willson Action represented the interests of the Class Members, such as the Trustee, and those in privity with them, such as Lee. *See* N.Y. C.P.L.R. 901(a)(4) (noting the prerequisites to a class action include that "the representative parties will fairly and adequately protect the interests of the class"). In the Willson Judgment, the court found the named plaintiffs had a sufficient stake in the outcome of the Willson Action and did not have interests antagonistic to those of the class. (CR 256-57). Moreover, the Trustee had succeeded to Lee's interests in the Policies and was, through his status as a Class Member, representing Lee's interests as well.

Third, the Trust Agreement expressly provided the documents executed by the Trustee "shall be binding and conclusive upon [NY Life] and upon all persons interested in this Trust." (CR 778). The above-referenced provisions of the Trust Agreement, which was signed by both Lee and the Trustee, make it clear Lee was assigning to the Trustee all of his rights under the Policies, including his right to assert the claims at issue in this action. In conclusion, Lee was in privity with the Trustee for *res judicata* purposes.

### 3. Lee's Claims Were Raised and Disposed of in the Willson Action

The third and final element for *res judicata* is satisfied in this case because Lee's lawsuit is based on the same claims that were raised, and disposed of, in the

31

Willson Action. In the Willson Complaint, the class plaintiffs alleged NY Life fraudulently induced and deceived the class members into purchasing and maintaining life insurance policies based on false and misleading sales presentations, including alleged misrepresentations regarding the premium offset arrangement, which allowed policy owners to use accumulated dividend values from a whole life policy to pay all or part of the required premiums. (CR 93-113). Based on these allegations, the class plaintiffs asserted causes of action for breach of contract, fraud, negligent misrepresentation, violations of the New York deceptive trade practices law, and unjust enrichment. (CR 124-34).

As stated above, in the Willson Judgment, the court defined, through its approval of the Settlement Agreement, the "Released Transactions," in part, as:

> the marketing, solicitation, . . . sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of . . . any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Policies. (CR 328).

It provided the Class Members were releasing NY Life and the other released parties, including agents such as Rogers, from all claims stemming in any way from the Released Transactions and enjoined the Class Members from prosecuting claims in any forum against NY Life and the other released parties, including Rogers, based on the Released Transactions. (CR 328, 366-70). Specifically, the Willson Judgment released the claims of all Class Members arising out of, or

32

relating to, "(c) the number of out-of-pocket payments that would need to be paid for a life insurance policy or the Policies; (d) the ability to keep or not to keep the Policies In-Force based on a fixed number and/or amount of premium payments (less than the number and/or amount of payments required by the terms of the Policies), and/or the amount that would be realized or paid under the Policies based on a fixed number and/or amount of cash payments (less than the number and/or amount of payments required by the terms of the Policies), whether in the form of (i) cash value . . . ; [and] (j) the rate of return on premiums paid in terms of cash value or cash surrender value." (CR 367-69).

Lee's claims in this action fit squarely within the claims alleged, and released, in the Willson Action. Lee contends Rogers misrepresented in 1989 that Lee could fully pay the premiums on the Policies for $238,188.15, and after he made such payments, the Policies would remain in effect for his lifetime. (CR 719). Based on these factual allegations, Lee asserted claims in the Amended Petition against Rogers for negligence and violations of both the DTPA and Texas Insurance Code, which are akin to the claims in the Willson Complaint.

In fact, the Federal Court held the alleged misrepresentations complained of by Lee fell "squarely within the type of misrepresentations listed in the Willson release" (CR 42), and other courts across the country have reached the same result in addressing comparable claims. *See, e.g., Appleby v. Andreasen*, 758 N.W.2d

615, 620-21 (Neb. 2008) (holding the Willson Judgment barred claims for breach of contract, negligence, breach of fiduciary duty, misrepresentation, and negligent supervision even though the premium payments at issue were made after the Class Period); *New York Life Ins. Co. v. Griffin*, 794 So. 2d 1072, 1077 (Ala. 2001) (holding the Willson Judgment barred claims for fraud and breach of contract).

For example, in *Griffin*, the plaintiff alleged that NY Life's agent told him if he made a $42,104.78 premium payment on his whole life policy, it "would be the only money due and payable on this life insurance policy and that this sum would be adequate to fund the policy for the balance of the plaintiff's life." *Griffin*, 794 So. 2d at 1075. The trial court denied NY Life's motion for summary judgment, but the Supreme Court of Alabama reversed, holding the plaintiff was bound by the terms of the Willson Judgment with respect to these allegations. *Id.* at 1076-77. The same result is appropriate here, and the Court should affirm summary judgment in Defendants' favor, as all elements of *res judicata* are met.

## C. Lee's Claims Regarding Notice Lack Merit

Finally, Lee makes two arguments attacking the notice provided of the Willson Action and Willson Judgment, arguing summary judgment should be reversed because (1) he did not receive notice of the Willson Action or Willson Judgment, and (2) the notice was deficient. *See* Appellant's Brief, p. 15-17. However, these arguments must fail for numerous reasons.

34

### 1. Lee Was Not A Class Member Required to Be Noticed

First, Lee did not receive notice because, as shown above, he transferred the Policies, and all of his rights thereunder, to the Trustee and requested NY Life to recognize the Trustee as the new owner of the Policies and the recipient of all related communications. (CR 778-90, 792). Consistent with this ownership change and instruction, the parties to the Willson Action sent the Class Notice and a post-settlement notice regarding the Class Members' rights to the Trustee, as the owner of record of the Policies, at the address Lee and the Trustee provided to NY Life for the Trustee. (CR 791-92, 827). There is no reason to think the Trustee did not receive actual notice, as these notices were not returned as undelivered or undeliverable. (CR 827). Lee is bound by the Willson Judgment because he is in privity with the Trustee, and he does not and cannot cite any cases requiring notice be given to both class members and those in privity with class members.

Furthermore, summary judgment would be appropriate even if neither the Trustee nor Lee actually received these notices. Importantly, neither New York class action notice rules[4] nor due process require actual receipt of the individual notice by each and every possible class member; rather, the parties need only

---

[4] As Texas courts have recognized, the sufficiency of notice is determined under the rules of the sister state issuing the judgment—here, New York. *See, e.g., Hill Country Spring Water v. Krug,* 773 S.W.2d 637, 639 (Tex. App.—San Antonio 1989, writ denied) (observing the validity of an out-of-state judgment "is controlled by the law of" such state). The cases on which Lee relies from the United States Court of Appeals for the Fifth Circuit are neither controlling nor instructive. *See* Appellant's Brief, p. 15-16.

provide the best notice practicable. *See Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 WL 1161145, at \*16 (N.Y. Sup. Ct. Jan. 7, 1997); *see also Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (holding "all risk of non-receipt" need not be eliminated), cert. denied, 488 U.S. 1005 (1989); *In re Prudential Securities, Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362, 368 (S.D.N.Y.) (holding due process does not require that every class member receive actual notice if reasonable means are chosen that are likely to inform the persons affected), aff'd, 107 F.3d 3 (2d Cir. 1996), cert. denied, 521 U.S. 1119 (1997).

As the court in the Willson Action found, the parties gave the Class Members, such as the Trustee, notice that satisfied New York law and due process. The parties to the Willson Action sent notice, in the form directed by the court, to nearly three million class members at their last known address by first-class mail. (CR 80-81). The parties also caused notice, in the form directed by the court, to be published in The Wall Street Journal, USA Today, the national edition of The New York Times, the daily newspapers with the largest circulation in each of the 50 states and the District of Columbia, including The Dallas Morning News, and the 20 newspapers with the highest daily circulation in the country, unless such newspapers had already been targeted for publication as the highest circulation newspapers in their respective areas. (CR 81, 427). In total, the notice appeared in newspapers with an average aggregate daily circulation of approximately 22

million. (CR 81). Moreover, between NY Life's announcement of the proposed settlement of the Willson Action to the public in mid-August 1995 and the settlement hearing on November 15, 1995, nearly 200 articles and opinion pieces regarding the settlement appeared in newspapers and magazines across the county, and news of the settlement was the subject of TV and radio broadcasts. (CR 81).

Indeed, courts have repeatedly recognized that supplementing individual notice with publication notice represents an appropriate balance between protecting class members and making class actions workable. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (finding mailing to easily ascertainable class members constituted the "best notice practicable"); *In re Prudential Securities, Inc. Ltd. Partnerships Litigation*, 164 F.R.D. at 368 (providing for notice through mailing to reasonably ascertainable class members and publication). Accordingly, the methods of notice in the Willson Action constituted due, adequate, and reasonable notice to all Class Members and satisfied the requirements of New York law and due process. *See Elite Sportswear Products, Inc. v. New York Life Ins. Co.*, 2006 WL 3052703, at *6 (E.D. Pa. Oct. 24, 2006) ("The notice given for the Willson settlement exceeded the requirements of due process."), aff'd, 270 F. App'x 153 (3d Cir. 2008). This is true regardless of whether the Trustee actually received notice. *See Williams v. Marvin Windows and Doors*, 790 N.Y.S.2d 66, 67-68 (N.Y. App. Div. 2005) (rejecting plaintiffs' claim they never received notice of

37

class action settlement where they failed to show defendants did not act with reasonable diligence in complying with court-ordered notice method).

Furthermore, Lee's complaints regarding notice constitute an impermissible collateral attack on the Willson Judgment. Courts distinguish between void judgments, which may be set aside by a collateral attack, and voidable judgments, which must be challenged by a valid direct attack. *See PNS Stores, Inc. v. Rivera,* 379 S.W.3d 267, 271 (Tex. 2012) ("It is well settled that a litigant may attack a void judgment directly or collaterally, but a voidable judgment may only be attacked directly."); *James Mills Orchards Corp. v. Frank,* 244 N.Y.S. 473, 475 (N.Y. Sup. Ct. 1930) ("Such judgment is not void upon its face, but merely voidable and is not subject to such collateral attack.").

A judgment is void if it is shown the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court." *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex. 1985). Lee has not claimed the Willson Judgment is void, and his complaints regarding notice may only be raised through a direct attack in the Willson Action. In the meantime, however, the Trial Court properly gave, in accordance with the "full faith and credit" clause of the United States Constitution, the same force and effect to the Willson Judgment as it would give to one of its own judgments. *See* U.S. CONST. art. IV, § 1.

38

## 2. *Notices Were Adequate to Inform Class Members of Their Rights*

Finally, the notices the parties in the Willson Action sent to the Class Members, such as the Trustee, were adequate to inform them of their rights and the claims, such as the extra-contractual claims similar to those asserted herein by Lee, that were being released. For example, the Class Notice: (1) described the claims asserted in the Willson Complaint, including the challenges to the premium offset proposal, which was NY Life's method of using dividends to pay premiums on whole life policies, (2) set forth the benefits available to the Class Members and their right to opt out of the settlement, (3) stated "all claims that have been or could have been asserted in this lawsuit with respect to any Policy for which a Class Member has not been excluded will be dismissed on the merits and with prejudice," and (4) detailed the release as follows:

> Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert against the Releasees, either directly or indirectly, on their own behalf, on behalf of the Class or any other person, and hereby release and discharge the Releasees from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights, whether based on federal, state or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by Plaintiffs or any Class Member against the Releasees in the Actions or in any other court action or before any administrative body (including any state Department of Insurance or other regulatory commission), tribunal or arbitration panel on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions and servicing relating to the Released Transactions ....
> (CR 406, 408-13, 415).

39

As such, the notices adequately informed the Trustee of the claims that were being released, and Lee's arguments to the contrary are without merit.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees The Rogers Agency and C. Michael Rogers respectfully request that the Court affirm the Trial Court's grant of summary judgment in their favor, and grant them their costs incurred from having to defend this appeal.

Respectfully Submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By: _/s/ D. Craig Brinker_
      D. Craig Brinker
      State Bar No. 03033200
      craig.brinker@wilsonelser.com
      Lana P. Beverly
      State Bar No. 24075377
      lana.beverly@wilsonelser.com

901 Main Street, Suite 4800
Dallas, Texas 75202
(214) 698-8000
(214) 698-1101 (Facsimile)

**ATTORNEYS FOR APPELLEES
THE ROGERS AGENCY AND
C. MICHAEL ROGERS**

## CERTIFICATE OF SERVICE

This certifies that this document was served in accordance with the Texas Rules of Appellate Procedure on December 17, 2015, by the manner indicated upon the following persons:

John R. Mercy
MERCY CARTER TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503

James A. Holmes
THE LAW OFFICE OF JAMES HOLMES, P.C.
212 South Marshall
Henderson, Texas 75624

Andrew Jubinsky
Andrew Whitaker
Ryan McComber
FIGARI & DAVENPORT, LLP
Bank of America Plaza
901 Main Street, Suite 3400
Dallas, Texas 75202


_/s/ D. Craig Brinker_
D. Craig Brinker


## CERTIFICATE OF COMPLIANCE

I certify that this document is in compliance with Rule 9.4 of the Texas Rules of Appellate Procedure, is in 14-point font, footnotes in 12-point font, and consists of 10,980 words, as verified by computer word processing program.


_/s/ D. Craig Brinker_
D. Craig Brinker